IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| PAUL REINHART, INC., | § | Case No. 08-35283-HDH-11 |
| | § | |
| Debtor. | § | |

---

## DEBTOR'S AND OFFICIAL UNSECURED CREDITORS' COMMITTEE'S FIRST AMENDED JOINT PLAN OF LIQUIDATION UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE

---

E. Lee Morris
Deborah M. Perry
**MUNSCH HARDT KOPF & HARR, P.C.**
3800 Lincoln Plaza
500 N. Akard Street
Dallas, Texas 75201-6659
Telephone: (214) 855-7500
Facsimile: (214) 855-7584

**Attorneys for Paul Reinhart, Inc.,
Debtor and Debtor-in-Possession**


Michael R. Rochelle
Sean J. McCaffity
**ROCHELLE McCULLOUGH LLP**
325 N. St. Paul, Suite 4500
Dallas, Texas 75201
Telephone: (214) 953-0182
Facsimile: (214) 953-0185

**Attorneys for Official Unsecured
Creditors' Committee**

Dated: August 17, 2009

# TABLE OF CONTENTS

**ARTICLE 1**
**Definitions** ........................................................................................................................... 1

**ARTICLE 2**
**Classification of Claims and Equity Interests** ................................................................ 8
2.1.    Classification Generally ............................................................................................ 8
2.2.    Unclassified Claims ................................................................................................... 8
2.3.    Classified Claims and Equity Interests .................................................................... 8

**ARTICLE 3**
**Provisions for the Treatment of Unclassified Claims** ..................................................... 8
3.1.    Allowed Administrative Claims ................................................................................ 8
          3.1.1.    Treatment ................................................................................................... 8
          3.1.2.    Administrative Claim Applications and Deadline ..................................... 8
3.2.    Allowed Priority Tax Claims .................................................................................... 9
          3.2.1.    Treatment ................................................................................................... 9

**ARTICLE 4**
**Provisions for the Treatment of Classified Claims and Equity Interests;**
**Identification of Impaired Classes** .................................................................................. 9
4.1.    Class 1: Secured Claims of Lenders ......................................................................... 9
          4.1.1.    Equitable Subordination ............................................................................ 9
          4.1.2.    Treatment of Allowed Subordinated Secured Claims ................................ 9
          4.1.3.    Treatment of Non-Subordinated Allowed Secured Claims of Lenders ...... 9
          4.1.4.    Retention of Liens ..................................................................................... 9
          4.1.5.    Impairment ............................................................................................... 10
4.2.    Class 2: Allowed Secured Claims of Non-Lender Claimants ................................. 10
          4.2.1.    Treatment ................................................................................................. 10
          4.2.2.    Retention of Liens ................................................................................... 10
          4.2.3.    Impairment ............................................................................................... 10
4.3.    Class 3: Allowed Priority Non-Tax Claims ............................................................ 11
          4.3.1.    Treatment ................................................................................................. 11
          4.3.2.    Impairment ............................................................................................... 11
4.4.    Class 4: Allowed General Unsecured Claims ......................................................... 11
          4.4.1.    Treatment ................................................................................................. 11
          4.4.2.    Impairment ............................................................................................... 11
4.5.    Class 5: Allowed Unsecured Lender Claims .......................................................... 11
          4.5.1.    Equitable Subordination .......................................................................... 11
          4.5.2.    Treatment ................................................................................................. 11
          4.5.3.    Impairment ............................................................................................... 11
4.6.    Class 6: Allowed Subordinated Claims .................................................................. 12
          4.6.1.    Treatment ................................................................................................. 12
          4.6.2.    Impairment ............................................................................................... 12
4.7.    Class 7: Equity Interests ......................................................................................... 12
          4.7.1.    Treatment ................................................................................................. 12
          4.7.2.    Impairment ............................................................................................... 12

**ARTICLE 5**

**Acceptance or Rejection of the Plan;**

**Effect of Rejection by One or More Classes** ......................................................... 12
5.1.    Acceptance of Plan by Class of Claims ............................................................ 12
5.2.    Deemed Acceptance of Plan ........................................................................... 12
5.3.    Deemed Rejection of Plan ............................................................................. 12
5.4.    Cramdown ....................................................................................................... 12


**ARTICLE 6**

**Means for Implementation of Plan** ....................................................................... 13
6.1.    Creation, Funding and Administration of Creditor Trust ............................... 13
      6.1.1.    Establishment of the Creditor Trust ............................................. 13
      6.1.2.    Assets of the Creditor Trust ......................................................... 13
      6.1.3.    Satisfaction of Claims from Creditor Trust .................................. 13
      6.1.4.    Tax Treatment of Creditor Trust .................................................. 13
      6.1.5.    Administration of Creditor Trust by Trustee ............................... 13
      6.1.6.    Selection and Appointment of Trustee ........................................ 13
      6.1.7.    Successor Trustee ......................................................................... 14
      6.1.8.    Compensation of Trustee and Professionals ............................... 14
      6.1.9.    Limitation of Liability ................................................................. 14
      6.1.10.  Creditor Trust Records ................................................................. 14
      6.1.11.  Creditor Trust Oversight Committee ........................................... 14
      6.1.12.  Right and Powers of Creditor Trust Oversight Committee.......... 15
      6.1.13.  Successor Members of Creditor Trust Oversight Committee ....... 15
6.2.    Wind-Up and Termination of Debtor ............................................................. 15
6.3.    Approval and Consummation of PRAG Settlement ....................................... 16
6.4.    Cancellation of Notes and Instruments; Release of Liens .............................. 16
6.5.    Preservation of Causes of Action ................................................................... 16
6.6.    Exemption from Transfer Taxes ..................................................................... 16
6.7.    Termination of Pension Plan .......................................................................... 16


**ARTICLE 7**

**PRAG Settlement** ................................................................................................. 16
7.1.    Deposit of Confirmation Payment ................................................................. 16
7.2.    Confirmation Payment ................................................................................... 17
7.3.    Subsequent Payments ..................................................................................... 17
      7.3.1.    Organization and Purpose of NEWCO ........................................ 17
      7.3.2.    Timing and Amount of Subsequent Payments............................. 17
      7.3.3.    NEWCO Agreement .................................................................... 18
7.4.    Distribution Responsibility ............................................................................ 18
7.5.    Release of PRAG Parties ............................................................................... 18
7.6.    Release of Estate Parties ................................................................................ 18
7.7.    Dismissal of Certain Claims in East Lawsuit................................................. 19
7.8.    No Admissions ............................................................................................... 19


**ARTICLE 8**

**Executory Contracts and Unexpired Leases** ...................................................... 19
8.1.    Rejection of Executory Contracts and Unexpired Leases............................... 19
8.2.    Rejection Damage Claims............................................................................... 19

**ARTICLE 9**

**Distributions Under the Plan** ................................................................................................ 19
9.1.    Distributions Made to Holders as of Distribution Record Date ................................. 19
9.2.    Interim and Final Distributions of Net Available Funds ............................................ 19
9.3.    Form of Distributions ................................................................................................. 20
9.4.    Conditions to Distributions; Warranty of Entitlement ............................................... 20
9.5.    Withholding Taxes ..................................................................................................... 20
9.6.    Setoffs ........................................................................................................................ 20
9.7.    Rounding .................................................................................................................... 20
9.8.    *De Minimis* Distributions ........................................................................................... 20
9.9.    Reserves for Disputed Claims .................................................................................... 21
9.10.   Litigation and Administrative Expense Reserve ........................................................ 21
9.11.   Undeliverable and Unclaimed Distributions .............................................................. 21
9.12.   Disputed Distributions ............................................................................................... 22

**ARTICLE 10**

**Procedures for Resolving Disputed Claims** ...................................................................... 22
10.1.   Objections to Claims .................................................................................................. 22
10.2.   Post-Confirmation Proofs of Claim and Amendments .............................................. 22
10.3.   Settlement of Disputed Claims .................................................................................. 22

**ARTICLE 11**

**Conditions Precedent to Confirmation and Effectiveness of Plan** ................................. 22
11.1.   Conditions to Confirmation ....................................................................................... 22
11.2.   Conditions to Effective Date ...................................................................................... 23

**ARTICLE 12**

**Effects of Confirmation of Plan; Injunction and Exculpation** ........................................ 24
12.1.   Binding Effect of Plan ................................................................................................ 24
12.2.   Vesting of Assets ........................................................................................................ 24
12.3.   Injunction Against Interference with Plan ................................................................. 24
12.4.   Exculpation ................................................................................................................ 24

**ARTICLE 13**

**Miscellaneous Provisions** ..................................................................................................... 24
13.1.   Implementation .......................................................................................................... 24
13.2.   Modification of Plan .................................................................................................. 24
13.3.   Governing Law ........................................................................................................... 24
13.4.   Conflict of Provisions ................................................................................................ 24
13.5.   Headings ..................................................................................................................... 25
13.6.   Severability ................................................................................................................ 25
13.7.   No Admissions ........................................................................................................... 25
13.8.   Entire Agreement ....................................................................................................... 25
13.9.   Successors and Assigns .............................................................................................. 25
13.10.  Computation of Time ................................................................................................. 25
13.11.  Dissolution of Committee .......................................................................................... 25
13.12.  Closing of Bankruptcy Case ...................................................................................... 25
13.13.  Service of Pleadings and Notices .............................................................................. 25

**ARTICLE 14**
**Provisions for Retention of Jurisdiction** ......................................................................................... 26
14.1    Retention of Jurisdiction ......................................................................................................... 26

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| PAUL REINHART, INC., | § | Case No. 08-35283-HDH-11 |
| | § | |
| Debtor. | § | |

---

## DEBTOR'S AND OFFICIAL UNSECURED CREDITORS' COMMITTEE'S FIRST AMENDED JOINT PLAN OF LIQUIDATION UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE

---

Paul Reinhart, Inc., the debtor and debtor-in-possession, and the Official Unsecured Creditors' Committee hereby propose this First Amended Joint Plan of Liquidation Under Chapter 11 of the United States Bankruptcy Code, pursuant to Section 1121(a), Title 11, United States Code, as follows:

## ARTICLE 1
## DEFINITIONS

Unless the context otherwise requires, capitalized terms within this Plan shall have the meanings assigned to them in this Article. Such meanings shall be equally applicable to both the singular and plural forms of such terms. The words "herein," "hereof," "hereunder" and other words of similar import refer to the Plan as a whole and not to any particular section, subsection or clause contained in the Plan unless the context requires otherwise. Whenever it appears appropriate from the context, each term stated in the masculine, feminine or neuter gender include the masculine, feminine and neuter. Any capitalized term in the Plan which is not defined in this Article shall have the meaning assigned to such term by the Bankruptcy Code or the Bankruptcy Rules.

1.1. "Administrative Claim": A Claim for payment of an administrative expense of a kind specified in Section 503(b) of the Bankruptcy Code and referred to in Section 507(a)(2) of the Bankruptcy Code, including, without limitation, the actual, necessary costs and expenses incurred on or after the Petition Date for preserving the Estate of the Debtor, any actual and necessary costs and expenses of operating the business of the Debtor incurred on or after the Petition Date but prior to the Effective Date (including any Claim incurred in the ordinary course of the Debtor's business which may be paid in the ordinary course of the Debtor's business without order of the Bankruptcy Court), any indebtedness or obligations incurred or assumed by the Estate in connection with the conduct of the Debtor's business on or after the Petition Date and prior to the Effective Date, compensation for legal and other professional services and reimbursement of expenses awarded under Sections 330(a) or 331 of the Bankruptcy Code, outside vendor costs incurred in connection with the duplication and service of the Disclosure Statement, Plan, Ballots and notices associated with the Plan and confirmation hearing, and all fees and charges assessed against the Estate under Chapter 123, Title 28, United States Code.

1.2. "Administrative Claims Bar Date": The thirtieth (30th) day after the Effective Date, unless not a Business Day, in which case the Administrative Claims Bar Date shall be the first Business Day thereafter.

1.3. "Allowed": When used with respect to a Claim, means the Claim (a) to the extent that it is listed in the Schedules in a liquidated, non-contingent, and undisputed amount, but only if no proof of

claim is filed with the Bankruptcy Court to evidence such Claim on or before the Bar Date; or (b) as evidenced by a proof of claim filed on or before the Bar Date, but only to the extent asserted in a liquidated amount, and only if no objection to the allowance of the Claim, and no motion to expunge the proof of claim, is filed on or before the Claims Objection Deadline; or (c) to the extent allowed by a Final Order.

1.4.     "<u>Allowed Administrative Claim</u>":  All or that portion of an Administrative Claim which (a) is or becomes an Allowed Claim, (b) was incurred on or after the Petition Date, but prior to the Effective Date, in the ordinary course of the Debtor's business which may be paid in the ordinary course of the Debtor's business without order of the Bankruptcy Court, or (c) constitutes a fee or charge assessed against the Estate under Chapter 123, Title 28, United States Code.

1.5.     "<u>Allowed General Unsecured Claim</u>":  All or that portion of a General Unsecured Claim which is or becomes an Allowed Claim.

1.6.     "<u>Allowed Priority Non-Tax Claim</u>":  All or that portion of a Priority Non-Tax Claim which is or becomes an Allowed Claim.

1.7.     "<u>Allowed Priority Tax Claim</u>":  All or that portion of a Priority Tax Claim which is or becomes an Allowed Claim.

1.8.     "<u>Allowed Secured Claim</u>":  All or that portion of a Secured Claim which (a) is or becomes an Allowed Claim secured by a valid, perfected, enforceable and unavoidable Lien on Collateral, or that is subject to setoff under Section 553 of the Bankruptcy Code, and (b) has been or hereafter is duly established in the Bankruptcy Case as a Secured Claim, but only to the extent of the value of the interest of the holder of such Secured Claim in the Debtor's interest in the Assets which the Bankruptcy Court finds to be valid Collateral for such Claim (except if the Class in which such Claim is classified validly and timely makes the election provided in Section 1111(b)(2) of the Bankruptcy Code, in which case the entire amount of the Allowed Claim shall be an Allowed Secured Claim).

1.9.     "<u>Allowed Subordinated Claim</u>":  All or that portion of a Subordinated Claim which is or becomes an Allowed Claim.

1.10.     "<u>Allowed Subordinated Secured Claim</u>":  All or that portion of a Subordinated Secured Claim which is or becomes an Allowed Claim.

1.11.     "<u>Allowed Unsecured Lender Claim</u>":  All or that portion of an Unsecured Lender Claim which is or becomes an Allowed Claim.

1.12.     "<u>Articles</u>":  The Articles of Incorporation of the Debtor dated May 15, 1980, as the same have been amended from time to time thereafter.

1.13.     "<u>Assets</u>":  All right, title and interest in and to any and all property of every kind or nature, whether tangible or intangible, owned by the Debtor or Estate as of the Effective Date, including, but not limited to, Causes of Action.

1.14.     "<u>Ballot</u>":  A form of ballot approved by the Bankruptcy Court for use by a Creditor to vote to accept or reject the Plan.

1.15.     "<u>Balloting Agent</u>":  Grant Thornton LLP.

1.16.     "<u>Bank Agent</u>":  Wells Fargo HSBC Trade Bank, National Association, in its capacity as the Administrative Agent under the Intercreditor Agreement (as successor to Coöperatieve Centrale Raiffeisen-Boerenleenbank B.A., "Rabobank International", New York Branch), and its successors and assigns in such capacity.

1.17. "Bankruptcy Case": The case commenced in the Bankruptcy Court under Chapter 11 of the Bankruptcy Code by the Debtor's filing of its voluntary petition on October 15, 2008, Case No. 08-35283-HDH-11.

1.18. "Bankruptcy Code": Title 11 of the United States Code, as applicable to the Bankruptcy Case as of the Petition Date, plus any and all amendments thereto which have been made or are hereafter made retroactively applicable to the Bankruptcy Case.

1.19. "Bankruptcy Court": The United States Bankruptcy Court for the Northern District of Texas, Dallas Division, or in the event such court ceases to exercise jurisdiction over the Bankruptcy Case, the United States District Court for the Northern District of Texas or any adjunct thereof which comes to exercise jurisdiction over the Bankruptcy Case.

1.20. "Bankruptcy Rules": The Federal Rules of Bankruptcy Procedure, as amended and prescribed under Section 2075, Title 28, United States Code, as applicable to the Bankruptcy Case, together with the Local Rules of the Bankruptcy Court.

1.21. "Bar Date": The deadline for the filing of proofs of claim in the Bankruptcy Case, set by the Bankruptcy Court as February 18, 2009 for non-governmental Claimants or April 13, 2009 for governmental Claimants, or such other date as may apply to a particular Claimant or Claim pursuant to a duly-entered Final Order of the Bankruptcy Court.

1.22. "Books and Records": All books and records of the Debtor, whether in paper or electronic format, which the Post-Confirmation Debtor, in its sole and absolute discretion, determines it must retain in order to wind-up its remaining affairs and formally terminate its existence.

1.23. "Business Day": Any day other than a Saturday, Sunday or "legal holiday" as defined in Bankruptcy Rule 9006(a).

1.24. "Bylaws": The Bylaws of the Debtor dated November 1, 1989, as the same have been amended from time to time thereafter.

1.25. "Cash": Lawful currency of the United States of America and its equivalents.

1.26. "Causes of Action": Any and all causes of action, claims, rights of action, suits or proceedings, whether in law or equity, whether known or unknown, which have been or could be asserted by the Debtor or the Estate as of the Effective Date.

1.27. "Claim": Any right to payment from the Debtor or Debtor's Estate, whether or not such right is reduced to judgment, liquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or any right to an equitable remedy against the Debtor or Debtor's Estate for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

1.28. "Claimant": A Person asserting a Claim.

1.29. "Claims Objection Deadline": One hundred eighty (180) days after the Effective Date, unless extended by the Bankruptcy Court, for cause shown, upon motion filed with the Bankruptcy Court on or prior to such date.

1.30. "Class": A group of Claims or Equity Interests as designated pursuant to Article 2 of the Plan.

1.31. "Collateral": An Asset(s) subject to a valid, enforceable, and non-avoidable Lien securing the payment of a Claim.

1.32. "Committee":  The Official Unsecured Creditors' Committee appointed in the Bankruptcy Case pursuant to Section 1102 of the Bankruptcy Code.

1.33. "Confirmation Date":  The date of entry of the Confirmation Order by the Bankruptcy Court.

1.34. "Confirmation Hearing":  The hearing scheduled by the Bankruptcy Court to consider confirmation of the Plan.

1.35. "Confirmation Order":  An order of the Bankruptcy Court, and any amendments thereto, confirming the Plan in accordance with the provisions of Section 1129 of the Bankruptcy Code, including any separately-entered findings of fact and conclusions of law in relation thereto.

1.36. "Confirmation Payment":  The payment to be made by PRAI-Texas to the Estate in accordance with the provisions of Section 7.2 of the Plan.

1.37. "Creditor":  The holder of a Claim.

1.38. "Creditor Trust":  The PRI Creditors Trust, to be established in accordance with the provisions of Section 6.1.1 of the Plan.

1.39. "Creditor Trust Documentation":  The documents executed to create the Creditor Trust in accordance with the provisions of Section 6.1.1 of the Plan, which shall substantially be in the form of the documentation attached hereto as Exhibit 1.

1.40. "Creditor Trust Oversight Committee":  The committee established pursuant to Section 6.1.11 of the Plan.

1.41. "Debtor":  Paul Reinhart, Inc., the debtor and debtor-in-possession in the Bankruptcy Case.

1.42. "Deficiency Claim":  The amount of a Secured Claim which is not an Allowed Secured Claim; *provided, however*, that if the Secured Claim is within a Class that validly and timely makes the election provided in Section 1111(b)(2) of the Bankruptcy Code, there shall be no Deficiency Claim with respect to such Secured Claim.

1.43. "Disallowed":  When used with respect to a Claim, (a) the amount of the Claim as to which a Final Order is entered sustaining an objection to the allowance of such amount, or (b) the amount of the Claim listed in the Schedules as contingent, disputed or unliquidated, if no superseding proof of claim is filed by the holder thereof by the Bar Date, or (c) the amount of the Claim to the extent expunged, disallowed, withdrawn or otherwise denied by either a Final Order or an acknowledgment executed by the holder of the Claim, or (d) the amount of the Claim that was neither listed in the Schedules nor evidenced by a proof of claim filed by the holder thereof by the Bar Date.  No distributions shall be made under the Plan in relation to Disallowed Claims.

1.44. "Disclosure Statement":  The Disclosure Statement Pursuant to 11 U.S.C. § 1125 in Support of Debtor's and Official Unsecured Creditors' Committee's First Amended Joint Plan of Liquidation Under Chapter 11 of the United States Bankruptcy Code, issued in connection with the Plan and approved by the Bankruptcy Court, together with all exhibits, amendments and supplements thereto that have been approved by the Bankruptcy Court.

1.45. "Disclosure Statement Hearing":  The hearing scheduled by the Bankruptcy Court to consider approval of the Disclosure Statement.

1.46. "Disputed":  When used with respect to a Claim, that portion of the Claim that is neither Allowed nor Disallowed.

1.47.    "Disputed Claims Reserve Account":  An interest-bearing account of the Creditor Trust which is established and maintained by the Trustee pursuant to the provisions of Section 9.9 of the Plan.

1.48.    "Distribution Record Date":  The date established by the Bankruptcy Court as the record date for the making of distributions or the reserving of distributions, as the case may be, which shall be no earlier than the Effective Date.

1.49.    "East Lawsuit":  That certain Adversary Proceeding initiated in the Bankruptcy Court and styled and numbered: *East Cotton Company Inc., et al. v. Wells Fargo Bank, N.A., et al.*, Adversary No. 08-3438, U.S. Bankruptcy Court, Northern District of Texas.

1.50.    "East Plaintiffs":  Collectively, East Cotton Company Inc., Michael D. East, and each of the Cotton Growers and Gin Companies identified on Exhibit 1 to the Original Adversary Complaint filed in the East Lawsuit.

1.51.    "Effective Date":  The date on which all of the conditions set forth in Section 11.2 of the Plan have been satisfied or, to the extent permitted by said section, waived.

1.52.    "Equity Interest":  Any ownership interest in the Debtor, including, without limitation, any shares of stock in the Debtor and any warrant, right or claim of right to convert, purchase, acquire, sell or subscribe to any ownership interest in the Debtor.

1.53.    "Estate":  The estate of the Debtor created on the Petition Date pursuant to, and consisting of all property interests described in or provided by, Section 541 of the Bankruptcy Code, including, without limitation, all property interests becoming part of such estate after the Petition Date in accordance with Section 541 of the Bankruptcy Code.

1.54.    "Exculpated Parties":  Collectively, the Plan Proponents and their respective officers, directors, employees, attorneys, accountants, financial advisors and other agents, professionals and representatives.

1.55.    "Final Order":  An order, judgment or decree as to which (a) the time to appeal, petition for *certiorari*, or to move for reargument or rehearing has expired and no appeal, petition for *certiorari*, or request for reargument or rehearing has been made by any party, (b) any right to appeal, petition for *certiorari*, or to seek reargument or rehearing has been waived in writing in form and substance satisfactory to the Debtor (if prior to the Effective Date) or the Trustee (if after the Effective Date), or (c) an appeal, writ of *certiorari*, reargument or rehearing has been taken or sought, and the order, judgment or decree has been upheld or *certiorari*, reargument or rehearing has been denied and, in either case, the time to take any further appeal, to petition for *certiorari*, or to move for reargument or rehearing has expired.

1.56.    "General Unsecured Claim":  An Unsecured Claim, other than an Unsecured Lender Claim or Subordinated Claim.

1.57.    "Intercreditor Agreement":  That certain Agreement dated as of December 18, 2003 (as amended, supplemented or otherwise modified from time to time) by and among the Debtor, the Lenders and the Bank Agent.

1.58.    "Lender Deficiency Claim":  A Deficiency Claim held by, or asserted on behalf of, a Lender.

1.59.    "Lenders":    Collectively, Wells Fargo HSBC Trade Bank, National Association, Coöperatieve Centrale Raiffeisen-Boerenleenbank B.A., "Rabobank International", New York Branch, Natixis, CoBank, ACB, Standard Chartered Bank, The Bank of Tokyo-Mitsubishi UFJ, Ltd., Bank of America, N.A., and Australia and New Zealand Banking Group Limited, each of their respective

successors and assigns, and each of their respective affiliates who asserts a Claim and/or Lien on account of their affiliation with any of the foregoing lenders, including, without limitation, Rabo Capital Services, Inc. The Bank Agent shall also constitute a "Lender" for purposes of this definition with respect to any Claim(s) that it asserts in the Bankruptcy Case, individually and/or on behalf of the Lenders.

1.60. "Lien": A charge against or interest in property to secure payment of a debt or performance of an obligation, including, but not limited to, a mortgage, deed of trust lien, security interest, judicial lien, or writ of attachment.

1.61. "List of Equity Holders": The List of Equity Security Holders filed in the Bankruptcy Case pursuant to Bankruptcy Rule 1007.

1.62. "Litigation and Administrative Expense Reserve": The reserve to be established and maintained by the Trustee pursuant to the provisions of Section 9.10 of the Plan.

1.63. "March Trades": All trades of cotton futures or options made by or on behalf of the Debtor in March 2008.

1.64. "Net Available Funds": At any given time, the Cash on hand in the Creditor Trust, excluding funds on deposit in the Disputed Claims Reserve Account and the Litigation and Administrative Expense Reserve.

1.65. "NEWCO": That certain entity described in Section 7.3.1 of the Plan.

1.66. "Non-Lender Claimants": Claimants other than the Lenders.

1.67. "Order": An order entered by the Bankruptcy Court.

1.68. "Other Growers": Any and all producers or suppliers of cotton, other than the East Plaintiffs, who have filed a proof of claim in the Bankruptcy Case to assert a Claim against the Debtor on account of the Debtor's failure to perform under a cotton purchase contract.

1.69. "Person": An individual, corporation, partnership, joint venture, trust, estate, unincorporated association, unincorporated organization, governmental entity or political subdivision thereof, or any other entity.

1.70. "Petition Date": October 15, 2008, the date of the filing of the Bankruptcy Case.

1.71. "Plan": This Debtor's and Official Unsecured Creditors' Committee's First Amended Joint Plan of Liquidation Under Chapter 11 of the United States Bankruptcy Code, in its present form or as it may be altered, amended, modified or supplemented from time to time in accordance with Section 13.2 hereof.

1.72. "Plan Proponents": Collectively, the Debtor and the Committee.

1.73. "Post-Confirmation Debtor": The Debtor, following the Effective Date of the Plan.

1.74. "PRAG": Paul Reinhart AG.

1.75. "PRAG Affiliates": Any and all existing and future PRAG-related entities, affiliates or direct or indirect subsidiaries.

1.76. "PRAG Settlement": The settlement set forth in Article 7 of the Plan.

1.77. "PRAI": Paul Reinhart America, Inc., a Delaware corporation.

1.78. "PRAI-Texas": PRAI Texas, Inc., a Texas corporation.

1.79. "Priority Non-Tax Claim": An Unsecured Claim entitled to priority in payment pursuant to Section 507(a)(4) or (a)(5) of the Bankruptcy Code.

1.80. "Priority Tax Claim": A Claim entitled to priority in payment pursuant to Section 507(a)(8) of the Bankruptcy Code.

1.81. "Pro Rata Share": With respect to distributions to holders of Allowed Claims and reserves established on account of Disputed Claims, a proportionate share, such that a distribution of a Pro Rata Share with respect to an Allowed Claim of a particular Class shall bear the same ratio to all distributions and reserves on account of such Class as the dollar amount that such Allowed Claim bears to the dollar amount of all Allowed Claims and Disputed Claims in such Class, and that the reserve of a Pro Rata Share with respect to a Disputed Claim of a particular Class shall bear the same ratio to all distributions and reserves on account such Class as the dollar amount of such Disputed Claim bears to the dollar amount of all Allowed Claims and Disputed Claims in such Class.

1.82. "Retained Assets": All Books and Records of the Debtor.

1.83. "Schedules": The Schedules of Assets and Liabilities filed in the Bankruptcy Case pursuant to Bankruptcy Rule 1007, as they have been or may hereafter be amended.

1.84. "Secured Claim": A Claim which is secured by a Lien on Collateral, or that is subject to setoff under Section 553 of the Bankruptcy Code, and shall include, but not be limited to, any amounts which are asserted under Section 506(b) of the Bankruptcy Code as part of such Claim; *provided, however*, that (a) a Claim shall only be subject to Secured Claim status to the extent such Claim has been duly and timely evidenced as a Secured Claim in the Bankruptcy Case; and (b) a Claim which qualifies as both a Secured Claim pursuant to the foregoing description and also a Priority Tax Claim as defined in Section 1.80 of the Plan shall be treated as a Priority Tax Claim, and not a Secured Claim, for purposes of this Plan.

1.85. "Subordinated Claim": All or any portion of a Claim, other than a Claim held by or asserted on behalf of a Lender, which is ordered by the Bankruptcy Court to be subordinated in payment to General Unsecured Claims pursuant to, or in accordance with, Section 510 of the Bankruptcy Code.

1.86. "Subordinated Secured Claim": A Secured Claim held by, or asserted on behalf of, a Lender which is subordinated in accordance with the provisions of Section 4.1.1 of the Plan.

1.87. "Subsequent Payments": Those certain payments to be made by NEWCO to the Creditor Trust in accordance with the provisions of Section 7.3.2 of the Plan.

1.88. "Trust Assets": All Assets of the Debtor and the Estate as of the Effective Date, including, without limitation, the Confirmation Payment, but excluding the Retained Assets.

1.89. "Trustee": The trustee of the Creditor Trust.

1.90. "Unsecured Claim": A Claim which is not an Administrative Claim, Priority Tax Claim, Priority Non-Tax Claim or Secured Claim. Unsecured Claims shall include, without limitation, Deficiency Claims and Claims arising from the rejection of executory contracts and/or unexpired leases pursuant to Sections 365 and/or 1123(b)(2) of the Bankruptcy Code.

1.91. "Unsecured Lender Claim": An Unsecured Claim held by, or asserted on behalf of, a Lender.

1.92. "Voting Deadline": The deadline for the receipt of completed and duly-executed Ballots by the Balloting Agent, as set forth within the Bankruptcy Court's Order approving the Disclosure Statement or such other Order of the Bankruptcy Court entered thereafter which extends such deadline.

## ARTICLE 2
## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

2.1.    **Classification Generally**.  All Allowed Claims, except Allowed Administrative Claims and Allowed Priority Tax Claims, and all Equity Interests are placed into Classes under the Plan.  A Claim is classified within a particular Class only to the extent that the Claim qualifies under the description of that Class.  An Equity Interest is classified within a particular Class only to the extent that the Equity Interest qualifies under the description of that Class.  A proof of claim asserting a Claim which is properly includible in more than one Class is only entitled to inclusion within a particular Class to the extent that it qualifies under the description of such Class, and shall be included within a different Class(es) to the extent that it qualifies under the description of such different Class(es).

2.2.    **Unclassified Claims**.  The following types of Claims are not classified under the Plan:

> Allowed Administrative Claims
> Allowed Priority Tax Claims

2.3.    **Classified Claims and Equity Interests**.  The following Classes of Claims and Equity Interests are established under the Plan:

> Class 1:  Secured Claims of Lenders
> Class 2:  Allowed Secured Claims of Non-Lender Claimants
> Class 3:  Allowed Priority Non-Tax Claims
> Class 4:  Allowed General Unsecured Claims
> Class 5:  Allowed Unsecured Lender Claims
> Class 6:  Allowed Subordinated Claims
> Class 7:  Equity Interests

## ARTICLE 3
## PROVISIONS FOR THE TREATMENT OF UNCLASSIFIED CLAIMS

3.1.    **Allowed Administrative Claims**

3.1.1.    Treatment.  In full and final satisfaction of Allowed Administrative Claims, each Allowed Administrative Claim shall, unless otherwise agreed, be paid in full in Cash by no later than the later of (a) fifteen (15) days after the Effective Date, or (b) fifteen (15) days after becoming an Allowed Administrative Claim; *provided, however*, that (x) Allowed Administrative Claims that represent liabilities incurred on or after the Petition Date, but prior to the Effective Date, in the ordinary course of the Debtor's business which may be paid in the ordinary course of the Debtor's business without order of the Bankruptcy Court shall be paid in accordance with the agreements related thereto; and (y) from and after the Effective Date, any fees and charges which are assessed under Chapter 123, Title 28, United States Code, in relation to the Bankruptcy Case shall be paid by the Trustee from the Creditor Trust as they become due.

3.1.2.    Administrative Claim Applications and Deadline.  Holders of Administrative Claims, other than Allowed Administrative Claims, must by no later than the Administrative Claims Bar Date (a) file an application with the Bankruptcy Court for allowance of the Administrative Claim, (b) serve a copy of such application on the Debtor, the Committee, the Trustee, and the United States Trustee, and (c) file and serve a notice of the filing of the application on all other parties entitled to notice in the Bankruptcy Case.  Failure to file and serve such application and notice by the Administrative Claims Bar Date shall result in the Administrative Claim being forever barred and discharged.

3.2.    **Allowed Priority Tax Claims**

3.2.1.    <u>Treatment</u>.  In full and final satisfaction of Allowed Priority Tax Claims, each Allowed Priority Tax Claim shall, unless otherwise agreed, be paid in full in Cash by no later than the later of (a) fifteen (15) days after the Effective Date, or (b) fifteen (15) days after becoming an Allowed Priority Tax Claim.

**ARTICLE 4**
**PROVISIONS FOR THE TREATMENT OF CLASSIFIED CLAIMS**
**AND EQUITY INTERESTS; IDENTIFICATION OF IMPAIRED CLASSES**

4.1.    **Class 1:  Secured Claims of Lenders**

4.1.1.    <u>Equitable Subordination</u>.  Pursuant to Section 510(c) of the Bankruptcy Code, and for the reasons set forth in the Disclosure Statement, all Secured Claims held by, or asserted on behalf of, the Lenders shall be equitably subordinated for purposes of distributions under the Plan to all General Unsecured Claims, and all Liens securing such Secured Claims shall be transferred to the Estate, in each case except to the extent ordered otherwise by the Bankruptcy Court.  If, and to the extent, the Bankruptcy Court orders, as part of the Confirmation Order, that such Secured Claims be so subordinated, then such subordinated Secured Claims shall constitute Subordinated Secured Claims and, to the extent Allowed, shall be treated in accordance with the provisions of Section 4.1.2 of the Plan.  If, and only to the extent, the Bankruptcy Court does not order, as part of the Confirmation Order, that such Secured Claims be so subordinated, then such non-subordinated Secured Claims, to the extent Allowed, shall be treated in accordance with the provisions of Section 4.1.3 of the Plan.

4.1.2.    <u>Treatment of Allowed Subordinated Secured Claims</u>.  In full and final satisfaction of Allowed Subordinated Secured Claims, each Allowed Subordinated Secured Claim shall be satisfied as follows:  If and when (a) all Allowed Claims in Class 4 have been fully satisfied in accordance with the provisions of Section 4.4.1 of the Plan (or in the case of Disputed Claims in Class 4, have been reserved for in accordance with the provisions of Section 9.9 of the Plan), and (b) there remain Net Available Funds in the Creditor Trust for distribution to Creditors, then as soon as practicable thereafter, each holder of an Allowed Subordinated Secured Claim, unless otherwise agreed, shall be paid on account of such Allowed Subordinated Secured Claim a Pro Rata Share of the Net Available Funds in the Creditor Trust, calculated in relation to all other Allowed Subordinated Secured Claims, all Allowed Unsecured Lender Claims, and all Allowed Subordinated Claims.  Distributions of Net Available Funds shall be made in accordance with Section 9.2 of the Plan.

4.1.3.    <u>Treatment of Non-Subordinated Allowed Secured Claims of Lenders</u>.  In full and final satisfaction of non-subordinated Allowed Secured Claims of the Lenders, each such Allowed Secured Claim shall, unless otherwise agreed, be satisfied by no later than the later of (a) fifteen (15) days after the Effective Date, or (b) fifteen (15) days after becoming an Allowed Secured Claim, in one of the following ways at the option of the Trustee:

(a)    the Allowed Secured Claim shall be paid in full in Cash; or

(b)    the Trustee shall transfer the Collateral securing the Allowed Secured Claim to the Bank Agent for disposition in accordance with the Intercreditor Agreement and any applicable Orders of the Bankruptcy Court.

4.1.4.    <u>Retention of Liens</u>.  Holders of non-subordinated Allowed Secured Claims within Class 1 of the Plan shall retain their Liens in any Collateral securing such Allowed Secured Claims; *provided,*

*however*, that if any such Allowed Secured Claim is satisfied in accordance with the provisions of Section 4.1.3(a) of the Plan, then upon the payment in full of such Allowed Secured Claim, the holder of such Allowed Secured Claim shall execute any and all documents deemed necessary by the Trustee to evidence the release and extinguishment of such holder's Liens.

4.1.5. <u>Impairment</u>. Class 1 is impaired under the Plan.

4.2. **<u>Class 2: Allowed Secured Claims of Non-Lender Claimants</u>**

4.2.1. <u>Treatment</u>. In full and final satisfaction of Allowed Secured Claims held by Non-Lender Claimants, each such Allowed Secured Claim shall, unless otherwise agreed, be satisfied by no later than the later of (a) fifteen (15) days after the Effective Date, or (b) fifteen (15) days after becoming an Allowed Secured Claim, in one of the following ways at the option of the Trustee:

(a)  the Allowed Secured Claim shall be paid in full in Cash; or

(b)  the Trustee shall execute a written acknowledgment on behalf of the Creditor Trust pursuant to which the Creditor Trust assumes the Allowed Secured Claim and leaves unaltered the legal, equitable and contractual rights to which such Allowed Secured Claim entitles the holder of such Allowed Secured Claim; or

(c)  notwithstanding any contractual provision or applicable law that entitles the holder of the Allowed Secured Claim to demand or receive accelerated payment of such Allowed Secured Claim after the occurrence of a default, (i) the Trustee, on behalf of the Creditor Trust, shall cure any such default that occurred before or after the Petition Date, other than a default of a kind specified in Section 365(b)(2) of the Bankruptcy Code or of a kind that Section 365(b)(2) of the Bankruptcy Code expressly does not require to be cured, (ii) the maturity of such Allowed Secured Claim, as such maturity existed before such default, shall be reinstated, (iii) the holder of such Allowed Secured Claim shall be compensated from the Creditor Trust for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law, (iv) if such Allowed Secured Claim arises from any failure to perform a nonmonetary obligation, other than a default arising from failure to operate a nonresidential real property lease subject to Section 365(b)(1)(A) of the Bankruptcy Code, the holder such Allowed Secured Claim shall be compensated from the Creditor Trust for any actual pecuniary loss incurred by such holder as a result of such failure, and (v) the legal, equitable and contractual rights to which such Allowed Secured Claim entitles the holder of such Allowed Secured Claim shall not otherwise be altered; or

(d)  the Trustee shall transfer to the holder of the Allowed Secured Claim the Collateral securing the Allowed Secured Claim.

4.2.2. <u>Retention of Liens</u>. Holders of Allowed Secured Claims within Class 2 of the Plan shall retain their Liens in any Collateral securing such Allowed Secured Claims; *provided, however*, that if any such Allowed Secured Claim is satisfied in accordance with the provisions of Section 4.2.1(a), 4.2.1(b) or 4.2.1(c) of the Plan, then upon the payment in full of such Allowed Secured Claim, the holder of such Allowed Secured Claim shall execute any and all documents deemed necessary by the Trustee to evidence the release and extinguishment of such holder's Liens.

4.2.3. <u>Impairment</u>. Class 2 is unimpaired under the Plan.

4.3.    **Class 3: Allowed Priority Non-Tax Claims**

4.3.1.    <u>Treatment</u>.  In full and final satisfaction of Allowed Priority Non-Tax Claims, each Allowed Priority Non-Tax Claim shall, unless otherwise agreed, be paid in full in Cash by no later than the later of (a) fifteen (15) days after the Effective Date, or (b) fifteen (15) days after becoming an Allowed Priority Non-Tax Claim.

4.3.2.    <u>Impairment</u>.  Class 3 is unimpaired under the Plan.

4.4.    **Class 4: Allowed General Unsecured Claims**

4.4.1.    <u>Treatment</u>.  In full and final satisfaction of Allowed General Unsecured Claims, each Allowed General Unsecured Claim shall be satisfied as follows:  If and when (a) all Allowed Administrative Claims, all Allowed Priority Tax Claims, and all Allowed Claims in Classes 2 and 3 have been fully satisfied in accordance with the terms of the Plan (or in the case of Disputed Administrative Claims, Disputed Priority Tax Claims and Disputed Claims in Classes 2 and 3, have been reserved for in accordance with the provisions of Section 9.9 of the Plan), and (b) there remain Net Available Funds in the Creditor Trust for distribution to Creditors, then as soon as practicable thereafter each holder of an Allowed General Unsecured Claim, unless otherwise agreed, shall be paid on account of such Allowed General Unsecured Claim a Pro Rata Share of the Net Available Funds in the Creditor Trust, calculated in relation to all other Allowed General Unsecured Claims; *provided, however*, that the maximum aggregate amount of distributions to be made in relation to an Allowed General Unsecured Claim pursuant to this section shall be the Allowed amount of the General Unsecured Claim, without interest.  Distributions of Net Available Funds shall be made in accordance with Section 9.2 of the Plan.

4.4.2.    <u>Impairment</u>.  Class 4 is impaired under the Plan.

4.5.    **Class 5: Allowed Unsecured Lender Claims**

4.5.1.    <u>Equitable Subordination</u>.  Pursuant to Section 510(c) of the Bankruptcy Code, and for the reasons set forth in the Disclosure Statement, all Unsecured Lender Claims shall be equitably subordinated for purposes of distributions under the Plan to all General Unsecured Claims.  The treatment of Allowed Unsecured Lender Claims is predicated on such subordination as part of the Confirmation Order.

4.5.2.    <u>Treatment</u>.  In full and final satisfaction of Allowed Unsecured Lender Claims, each Allowed Unsecured Lender Claim shall be satisfied as follows:  If and when (a) all Allowed Claims in Class 4 have been fully satisfied in accordance with the provisions of Section 4.4.1 of the Plan (or in the case of Disputed Claims in Class 4, have been reserved for in accordance with the provisions of Section 9.9 of the Plan), and (b) there remain Net Available Funds in the Creditor Trust for distribution to Creditors, then as soon as practicable thereafter, each holder of an Allowed Unsecured Lender Claim, unless otherwise agreed, shall be paid on account of such Allowed Unsecured Lender Claim a Pro Rata Share of the Net Available Funds in the Creditor Trust, calculated in relation to all other Allowed Unsecured Lender Claims, all Allowed Subordinated Secured Claims, and all Allowed Subordinated Claims.  Distributions of Net Available Funds shall be made in accordance with Section 9.2 of the Plan.

4.5.3.    <u>Impairment</u>.  Class 5 is impaired under the Plan.

4.6. **Class 6: Allowed Subordinated Claims**

4.6.1. <u>Treatment</u>. In full and final satisfaction of Allowed Subordinated Claims, each Allowed Subordinated Claim shall be satisfied as follows: If and when (a) all Allowed Claims in Class 4 have been fully satisfied in accordance with the provisions of Section 4.4.1 of the Plan (or in the case of Disputed Claims in Class 4, have been reserved for in accordance with the provisions of Section 9.9 of the Plan), and (b) there remain Net Available Funds in the Creditor Trust for distribution to Creditors, then as soon as practicable thereafter, each holder of an Allowed Subordinated Claim, unless otherwise agreed, shall be paid on account of such Allowed Subordinated Claim a Pro Rata Share of the Net Available Funds in the Creditor Trust, calculated in relation to all other Allowed Subordinated Claims, all Allowed Subordinated Secured Claims, and all Allowed Unsecured Lender Claims. Distributions of Net Available Funds shall be made in accordance with Section 9.2 of the Plan.

4.6.2. <u>Impairment</u>. Class 6 is impaired under the Plan.

4.7. **Class 7: Equity Interests**

4.7.1. <u>Treatment</u>. On the Effective Date, all Equity Interests shall be cancelled, extinguished and otherwise rendered null, void and of no further force or effect, whatsoever, except for the sole purpose of effectuating the wind-up and termination of the Post-Confirmation Debtor pursuant to the provisions of Section 6.2 of the Plan. No distributions shall be made under the Plan on account of Equity Interests.

4.7.2. <u>Impairment</u>. Class 7 is impaired under the Plan.

## ARTICLE 5
## ACCEPTANCE OR REJECTION OF THE PLAN;
## EFFECT OF REJECTION BY ONE OR MORE CLASSES

5.1. **Acceptance of Plan by Class of Claims**. A Class of Claims shall have accepted the Plan if the Plan is accepted by Creditors holding at least two-thirds in amount and more than one-half in number of the Claims within such Class for which votes are cast by the Voting Deadline.

5.2. **Deemed Acceptance of Plan**. Classes 2 and 3 are not impaired under the Plan. Therefore, such Classes are deemed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code and votes on the Plan by the holders of Claims in such Classes will not be solicited.

5.3. **Deemed Rejection of Plan**. Class 7 is impaired under the Plan and the Plan does not provide for the holders of Equity Interests in Class 7 to receive or retain any property under the Plan. Therefore, such Class is deemed to have rejected the Plan pursuant to Section 1126(g) of the Bankruptcy Code and votes on the Plan by the holders of Equity Interests in such Class will not be solicited.

5.4. **Cramdown**. Because Class 7 is deemed to have rejected the Plan, the Plan Proponents request the Bankruptcy Court to confirm the Plan in accordance with the provisions of Section 1129(b) of the Bankruptcy Code.

## ARTICLE 6
## MEANS FOR IMPLEMENTATION OF PLAN

6.1.  **Creation, Funding and Administration of Creditor Trust**

6.1.1.  Establishment of the Creditor Trust.  On the Effective Date, the Debtor, the Trustee, and the members of the Creditor Trust Oversight Committee shall execute the Creditor Trust Documentation, thereby establishing the Creditor Trust.  The Debtor, the Trustee, members of the Creditor Trust Oversight Committee, and all Creditors shall be deemed to have adopted and approved the Creditor Trust Documentation as of the Effective Date.

6.1.2.  Assets of the Creditor Trust.  On the Effective Date, all of the Trust Assets shall be transferred to the Creditor Trust and, except as expressly provided otherwise in the Plan, such transfer shall be free and clear of all Liens, Claims and encumbrances.

6.1.3.  Satisfaction of Claims from Creditor Trust.  On the Effective Date, all Claims against the Debtor and the Estate, and all distribution rights conferred by the Plan on account thereof, shall be transferred to the Creditor Trust.  Similarly, on the Effective Date, all objections, counterclaims, rights of setoff, rights of recoupment, and any and all other defenses held by the Debtor or the Estate in relation to such Claims, in relation to such distribution rights, and in relation to the holders of such Claims and distribution rights, shall be preserved and transferred to the Creditor Trust, and from and after the Effective Date the Trustee shall have standing to assert, prosecute and settle any and all of such objections, counterclaims, rights of setoff, rights of recoupment, and other defenses, subject only to any limitations set forth in the Plan or the Creditor Trust Documentation.  Following the Effective Date, Claims which are or become Allowed Claims shall be satisfied solely and exclusively from the Creditor Trust in accordance with the provisions of the Plan, and the Post-Confirmation Debtor shall have no liability on any Claims.

6.1.4.  Tax Treatment of Creditor Trust.  The Creditor Trust shall be considered a "grantor" trust for federal income tax purposes and, therefore, shall not have any separate liability for federal income taxes relating to, or arising from, the conveyance, maintenance, investment or liquidation of assets of the Creditor Trust.  If and to the extent required by law, however, the Trustee shall file all tax returns that the Debtor or the Post-Confirmation Debtor would have been required to file if the Trust Assets had not been conveyed to the Creditor Trust.  Additionally, to the extent that the liquidation of assets of the Creditor Trust creates any tax liability, whatsoever, for the Post-Confirmation Debtor, the Creditor Trust shall be responsible for and shall promptly pay such tax liability from the assets of the Creditor Trust, and any such payments shall be considered costs and expenses of operation of the Creditor Trust.  The Trustee shall reserve a sum sufficient, from the assets of the Creditor Trust, to pay any accrued or potential tax liability arising out of the operation of the Creditor Trust, and such reserved sum shall constitute part of the Litigation and Administrative Expense Reserve.

6.1.5.  Administration of Creditor Trust by Trustee.  The Creditor Trust shall be administered by the Trustee, who shall administer the Creditor Trust consistent with the terms of the Plan, Confirmation Order, and Creditor Trust Documentation, and shall have all of the rights, obligations, powers and duties as set forth in the Plan and Creditor Trust Documentation.

6.1.6.  Selection and Appointment of Trustee.  The Trustee shall be a Person, selected by the Committee, who does not hold or represent an interest adverse to the Estate or to the Creditor Trust to be established pursuant to the Plan and who is a "disinterested person" as defined in Section 101(14) of the Bankruptcy Code (collectively, the "Trustee Qualification Requirements").  By no later than ten (10) days prior to the Disclosure Statement Hearing, the Committee shall file a notice with the Bankruptcy Court

identifying the Person selected by the Committee to serve as the Trustee. Said notice shall identify the Person selected and shall include a declaration, signed by such Person under oath, which describes the Person's background and experience, verifies that such Person meets the Trustee Qualification Requirements, specifies the hourly rate to be charged by such Person to the Creditor Trust in administering the Creditor Trust (which shall be the existing hourly rate that such Person customarily charges to his clients in other engagements), and evidences the Person's agreement to accept the appointment as Trustee under the terms and conditions set forth in the Plan and the Creditor Trust Documentation. On the Effective Date, and pursuant to the Confirmation Order, the Person identified by the Committee to serve as the Trustee shall be appointed as the Trustee of the Creditor Trust.

6.1.7. <u>Successor Trustee</u>. In the event of the death, resignation or discharge of the Trustee, the Creditor Trust Oversight Committee shall have the authority to, and shall promptly, appoint a successor Trustee who satisfies the Trustee Qualification Requirements set forth in Section 6.1.6 of the Plan.

6.1.8. <u>Compensation of Trustee and Professionals</u>. For services rendered by the Trustee in administering the Creditor Trust, the Trustee shall be compensated on an hourly basis, based upon the hourly rate which the Trustee customarily charges to his other clients. The Trustee shall also be reimbursed for all reasonable out-of-pocket expenses incurred in the performance of his duties and obligations in administering the Creditor Trust. Compensation and reimbursement of the Trustee shall be made solely and exclusively from assets of the Creditor Trust. The Trustee shall also have the authority to employ such Persons as the Trustee deems necessary to assist him in the administration of the Creditor Trust, and to compensate such Persons and reimburse such Persons for out-of-pocket expenses incurred by them on reasonable terms agreed to by the Trustee without the necessity of Bankruptcy Court approval. Compensation and reimbursement of such Persons shall be made solely and exclusively from assets of the Creditor Trust.

6.1.9. <u>Limitation of Liability</u>. No recourse shall ever be had, directly or indirectly, against the Trustee, in his individual capacity, by legal or equitable proceedings or otherwise, by virtue of any contract, agreement, promise, undertaking, covenant, instrument or other writing executed by the Trustee on behalf of the Creditor Trust for any authorized purpose in the administration of the Creditor Trust, it being expressly understood and agreed that all such liabilities shall be enforceable, to the extent valid, only against, and shall be satisfied only from, the Creditor Trust. Additionally, provided the Trustee acts in good faith, the Trustee shall not personally be liable for any action or omission in the administration of the Creditor Trust, and shall be indemnified by the Creditor Trust against any and all claims, causes of action and liability, including all expenses and defense costs, associated with, and shall be held harmless by the Creditor Trust against, each such action and omission, except to the extent that such action or omission constitutes gross negligence or willful misconduct on the part of the Trustee. As to all legal matters, the Trustee shall be entitled to rely upon the advice and opinions of his counsel.

6.1.10. <u>Creditor Trust Records</u>. The Trustee shall keep or cause to be kept books and records detailing all receipts, disbursements and reserves in the administration of the Creditor Trust, and such books and records shall be open to inspection at all reasonable times upon reasonable request of any Creditor beneficiary of the Creditor Trust.

6.1.11. <u>Creditor Trust Oversight Committee</u>. On the Effective Date, a Creditor Trust Oversight Committee shall be established consisting of no fewer than three and no more than five individuals, each of whom holds, or is the designated representative of an entity that holds, a General Unsecured Claim (the "Oversight Committee Qualification Requirements"). The Committee shall have the right to select the members of the Creditor Trust Oversight Committee and shall, by no later than ten (10) days prior to the Disclosure Statement Hearing, file a notice with the Bankruptcy Court identifying the individuals selected. Said notice shall identify the individuals selected and shall include a declaration, signed by each

such individual under oath, which verifies that such individual meets the Oversight Committee Qualification Requirements (including the name of the Creditor entity represented by such individual, if applicable) and evidences the individual's agreement to accept the appointment as a member of the Creditor Trust Oversight Committee under the terms and conditions set forth in the Plan and the Creditor Trust Documentation. On the Effective Date, and pursuant to the Confirmation Order, the individuals identified by the Committee to serve as the members of the Creditor Trust Oversight Committee shall be appointed as the members of the Creditor Trust Oversight Committee.

6.1.12. <u>Rights and Powers of Creditor Trust Oversight Committee</u>. From and after the Effective Date, the Creditor Trust Oversight Committee shall primarily serve as an advisory committee to the Trustee and shall provide input to the Trustee on matters affecting administration of the Creditor Trust. Additionally, the Creditor Trust Oversight Committee shall have the express authority to take the following actions:

    (a)    Appoint a successor Trustee in the event of the death, resignation or discharge of the Trustee;

    (b)    Review the books and records of the Creditor Trust; and

    (c)    File a motion with the Bankruptcy Court, on behalf of the Creditor Trust, requesting discharge of the Trustee in the event that the Creditor Trust Oversight Committee determines, after reasonable investigation, that the Trustee has taken certain actions, or failed to take certain actions, constituting malfeasance or gross negligence in the administration of the Creditor Trust.

Any action of the Creditor Trust Oversight Committee shall only be deemed authorized if a majority of the members of the Creditor Trust Oversight Committee vote in favor of such action. The members of the Creditor Trust Oversight Committee shall receive no compensation for their services, but shall be entitled to reimbursement for any reasonable out-of-pocket expenses (excluding attorneys' fees) incurred in connection with their services, which shall be paid solely and exclusively from the assets of the Creditor Trust. Neither the Creditor Trust Oversight Committee nor any member of the Creditor Trust Oversight Committee shall be personally liable to the Creditor Trust, the Trustee, any of the beneficiaries of the Creditor Trust or any other Person for any actions or omissions taken by the Creditor Trust Oversight Committee, and each of the members of the Creditor Trust Oversight Committee shall be indemnified by the Creditor Trust against any and all claims, causes of action and liability, including all expenses and defense costs, associated with, and shall be held harmless by the Creditor Trust against, each such action and omission, except to the extent that such action or omission constitutes gross negligence or willful misconduct on the part of such Creditor Trust Oversight Committee member.

6.1.13. <u>Successor Members of Creditor Trust Oversight Committee</u>. In the event of the death or resignation of a member of the Creditor Trust Oversight Committee, the remaining members of the Creditor Trust Oversight Committee shall have the authority to, and shall promptly, appoint a successor member to the Creditor Trust Oversight Committee who satisfies the Oversight Committee Qualification Requirements, unless the remaining members number at least three (3), in which case the remaining members may, instead, determine to not appoint a successor member.

6.2. **Wind-Up and Termination of Debtor**. On the Effective Date, all Equity Interests shall be cancelled, extinguished and otherwise rendered null, void and of no further force or effect, whatsoever, except for the purposes expressly set forth herein. On the Effective Date, (a) all remaining officers and directors of the Debtor shall be deemed terminated; and (b) the Trustee shall be deemed appointed as the President and sole member of the board of directors of the Post-Confirmation Debtor. Following the Effective Date, the Post-Confirmation Debtor shall promptly wind up all remaining affairs and thereafter formally terminate its existence, and PRAI shall execute any and all shareholder consents and/or

resolutions deemed necessary by the Trustee to cause such formal termination. On the Effective Date, the Debtor's Articles and Bylaws shall be deemed modified and amended to the extent necessary to effectuate this provision of the Plan. All reasonable expenses incurred by the Post-Confirmation Debtor in winding up and terminating its existence shall be paid from the Creditor Trust and shall be deemed to constitute expenses of administration of the Creditor Trust. The Trustee shall reserve a sum sufficient, from the assets of the Creditor Trust, to pay for such expenses, and such reserved sum shall constitute part of the Litigation and Administrative Expense Reserve.

6.3. **Approval and Consummation of PRAG Settlement**. Confirmation of the Plan shall constitute the Bankruptcy Court's approval of the PRAG Settlement and its determination that said settlement is fair and equitable and in the best interest of the Estate. On the Effective Date, the PRAG Settlement shall be binding on the Plan Proponents, the Creditor Trust, the Trustee, all Creditors and all Equity Interest holders, and shall be consummated in accordance with its terms.

6.4. **Cancellation of Notes and Instruments; Release of Liens**. Except as expressly otherwise provided in the Plan, on the Effective Date all notes, instruments, certificates and other documents evidencing Claims against the Debtor or the Estate shall be canceled and deemed terminated, and all Liens in or against the Assets shall be automatically, and without any further action required by any party or the Bankruptcy Court, deemed released and extinguished.

6.5. **Preservation of Causes of Action**. Except as expressly otherwise provided in the Plan, (a) all Causes of Action, including, without limitation, all of the Causes of Action referenced in Section XI of the Disclosure Statement, shall be preserved and shall be transferred to the Creditor Trust on the Effective Date as part of the Trust Assets, and (b) on and after the Effective Date, the Trustee shall have standing to pursue such Causes of Action and shall be deemed appointed as the representative of the Estate in accordance with Section 1123(b)(3) of the Bankruptcy Code for the purpose of enforcing, prosecuting and settling such Causes of Action.

6.6. **Exemption from Transfer Taxes**. In accordance with Section 1146(a) of the Bankruptcy Code, the making and/or delivery of any instrument of transfer under, or pursuant to the terms of, this Plan shall not be taxed under any law imposing a stamp tax or similar tax.

6.7. **Termination of Pension Plan**. On or about July 1, 1990, the Debtor established the Paul Reinhart, Inc. Employees Defined Benefit Pension Plan (as amended and restated from time to time, the "Pension Plan"). Unless the Pension Plan has previously been lawfully terminated prior to the Effective Date, following the Effective Date the Post-Confirmation Debtor, in coordination with the Trustee, shall expeditiously take all reasonable and necessary actions to effectuate a standard termination of the Pension Plan under applicable provisions of Title IV of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1301-1461, and any associated regulations. In connection therewith, if and to the extent the Pension Plan is underfunded on a termination basis, the Trustee shall transfer to the Pension Plan, on behalf of the Post-Confirmation Debtor, that amount of Cash from the Creditor Trust as is required to obtain all requisite governmental, regulatory, and Pension Benefit Guaranty Corporation approvals for such standard termination. The Trustee shall reserve a sum sufficient from the assets of the Creditor Trust to make such transfer, and such reserved sum shall constitute part of the Litigation and Administrative Expense Reserve.

## ARTICLE 7
## PRAG SETTLEMENT

7.1. **Deposit of Confirmation Payment**. In connection with seeking the Bankruptcy Court's approval of the Disclosure Statement, the Plan Proponents shall request entry of an order pursuant to

Bankruptcy Rule 3020(a) that provides that: (a) by no later than ten (10) days prior to the Confirmation Hearing, PRAI-Texas shall deliver the Confirmation Payment to the Debtor, which funds shall be deemed placed in trust with the Debtor and shall be deposited by the Debtor into a segregated interest-bearing account established for the exclusive purpose of the Plan; (b) in the event the Plan is confirmed by the Bankruptcy Court, then on the Effective Date of the Plan the Confirmation Payment (together with all interest earned thereon) shall be released to the Estate and transferred to the Creditor Trust as part of the Trust Assets; and (c) in the event the Plan is not confirmed by the Bankruptcy Court, then the Debtor shall immediately thereafter refund the Confirmation Payment (together with all interest earned thereon) to PRAI-Texas.

7.2. **Confirmation Payment**. On the Effective Date, the Confirmation Payment, totaling US $10,000,000.00, together with all interest earned thereon while held in trust by the Debtor pursuant to the provisions of Section 7.1 of the Plan, shall be deemed released from trust and paid by PRAI-Texas to the Estate, and then shall be immediately transferred to the Creditor Trust as part of the Trust Assets.

7.3. **Subsequent Payments**

7.3.1. <u>Organization and Purpose of NEWCO</u>. By no later than thirty (30) days prior to the Confirmation Hearing, PRAI-Texas shall disclose the name of the entity (referred to as "NEWCO" in the Plan) that has been established to conduct business within the United States for a minimum of three (3) years and that will be responsible for making the Subsequent Payments. Any and all cotton trading, purchasing, or selling conducted in the United States during the Obligation Period (as defined in Section 7.3.2 of the Plan) by, or on behalf of, PRAG, PRAI-Texas, or any of the other PRAG Affiliates shall be conducted through NEWCO. On the Effective Date, PRAG shall execute an instrument pursuant to which it covenants and agrees to be bound by this restriction for any business it chooses to directly or indirectly conduct within the United States during the Obligation Period.

7.3.2. <u>Timing and Amount of Subsequent Payments</u>. Following the Effective Date, NEWCO shall pay to the Creditor Trust the sum of US $5.00 per each bale of cotton that it purchases in the United States (collectively, the "Subsequent Payments") for a period of three years (the "Obligation Period"). The Obligation Period shall start to run on the later of the first day of the first calendar month following the Effective Date or the first day of the calendar month that NEWCO begins to conduct business in the United States. The Subsequent Payments shall be made with respect to cotton that NEWCO buys directly from growers and merchants in the United States without regard to whether such purchases are at a profit or loss; *provided, however*, that NEWCO shall have no obligation to make purchases of cotton that it does not deem to be in its interest and NEWCO shall remain entirely free in its trading decisions according to its own commercial judgment. Each of the Subsequent Payments shall be paid to the Creditor Trust, and each of the Subsequent Payments shall only become payable by NEWCO following NEWCO's sale and delivery of such purchased U.S. cotton to third parties. Specifically, NEWCO shall provide reporting and payments as follows: (i) first, within fifteen (15) days following the end of each month of the Obligation Period, NEWCO shall provide to the Trustee a written report specifying the number of bales of cotton that it purchased in the United States in the preceding month; (ii) second, as NEWCO sells and delivers such cotton to third parties, NEWCO shall provide to the Trustee, within fifteen (15) days following the end of each month in which NEWCO has made delivery of any such cotton, a written report specifying the number of bales so delivered during the preceding month; and (iii) third, within thirty (30) days after the end of each calendar month in which NEWCO has made delivery of any such cotton, NEWCO shall pay to the Creditor Trust an amount equal to US $5.00 per bale of cotton so delivered during the preceding month.

7.3.3. <u>NEWCO Agreement</u>. On the Effective Date, NEWCO shall execute an instrument pursuant to which it covenants and agrees to perform all of the obligations set out in Section 7.3.2 of the Plan and represents and warrants to the Debtor, the Creditor Trust and the Trustee that:

    (a)    NEWCO will handle all cotton trading, purchasing, or selling conducted in the United States during the Obligation Period by, or on behalf of, PRAG, PRAI-Texas, or any of the other PRAG Affiliates;

    (b)    NEWCO is adequately capitalized and will remain adequately capitalized throughout the entire period of time that it owes any obligation to the Creditor Trust;

    (c)    NEWCO's performance of the obligations set forth in Section 7.3.2 of the Plan has been duly authorized by all requisite corporate action on the part of NEWCO and will not violate any provision of any statute, rule or regulation, any provision of NEWCO's organizational and governing documents, any applicable order of any court, or any rule, regulation or order of any governmental body or agency; and

    (d)    NEWCO has obtained reasonably equivalent value in exchange for its agreement to perform all of the obligations set out in Section 7.3.2 of the Plan.

7.4. **Distribution Responsibility**. The Trustee shall be solely responsible for distributions from the Confirmation Payment and Subsequent Payments. None of the Debtor, PRAG, PRAI, PRAI-Texas or NEWCO shall have any responsibility for the making of any such distributions, nor shall any of them have any liability on account of any distributions that are made, or not made, by the Trustee from the Trust.

7.5. **Release of PRAG Parties**. On the Effective Date, the Debtor, on behalf of itself and the Estate, and the East Plaintiffs shall execute a release thereby (a) unconditionally and irrevocably waiving, remising, acquitting, and fully and forever releasing and discharging PRAG, PRAI and PRAI-Texas, and each of their respective (i) direct and indirect subsidiaries and (ii) officers, directors, shareholders, managers, employees and agents and those of their direct and indirect subsidiaries (collectively, the "PRAG Parties") from any and all claims which the Debtor, the Estate or the East Plaintiffs have or ever had against the PRAG Parties, and (b) covenanting and agreeing never to voluntarily aid in any way, foment, prosecute or cause to be commenced or prosecuted against any of the PRAG Parties any action or other proceeding based upon any claims which may have arisen at any time on or prior to the Effective Date; *provided, however*, that said release shall not release, nor be deemed to constitute a release or waiver of: (i) any of the obligations imposed upon any of the PRAG Parties pursuant to the Plan; (ii) any of the Debtor's or the Estate's rights with respect to any federal or state tax refunds obtained or claimed by PRAI on account of PRAI's filing of any consolidated tax returns in which the Debtor was or is included as a member of the consolidated tax group; (iii) any of the Debtor's or the Estate's rights with respect to the outstanding inter-company receivable owing by Pacific Pima Gin Company to the Debtor; or (iv) any of the Debtor's or the Estate's rights with respect to the outstanding inter-company receivable owing by Paul Reinhart (Australia) Pty. Ltd. ("PRAL") to the Debtor or any of the Debtor's or the Estate's defenses with respect to the Claim asserted by PRAL in the Bankruptcy Case; *and further provided*, that in the event that less than all of the East Plaintiffs execute the release required by this provision of the Plan, the release requirement shall nevertheless be deemed to have been satisfied provided the East Plaintiffs' counsel and/or designated agents have used their best efforts to obtain execution of the release by all of the East Plaintiffs.

7.6. **Release of Estate Parties**. On the Effective Date, PRAG, PRAI and PRAI-Texas shall execute a release thereby (a) unconditionally and irrevocably waiving, remising, acquitting, and fully and

forever releasing and discharging the Debtor, the Estate, and each of the Debtor's (i) direct and indirect subsidiaries and (ii) officers, directors, managers, employees and agents and those of its direct and indirect subsidiaries (collectively, the "Estate Parties") from any and all claims which PRAG, PRAI or PRAI-Texas have or ever had against the Estate Parties, and (b) covenanting and agreeing never to voluntarily aid in any way, foment, prosecute or cause to be commenced or prosecuted against any of the Estate Parties any action or other proceeding based upon any claims which may have arisen at any time on or prior to the Effective Date; *provided, however*, that said release shall not release, nor be deemed to constitute a release or waiver of, any of the obligations imposed upon any of the Estate Parties pursuant to the Plan.

7.7.    **Dismissal of Certain Claims in East Lawsuit**.  On the Effective Date, each and every claim and cause of action asserted by the East Plaintiffs or the Committee (if applicable) in the East Lawsuit against the Debtor, PRAI, or any of their respective officers, directors, managers, employees or agents (if applicable) shall be deemed dismissed with prejudice; *provided, however*, that such dismissal shall not result in the release or waiver of, or adversely impact in any way, any Claims asserted by the East Plaintiffs against the Debtor by and through proofs of claim filed in the Bankruptcy Case on or before the Bar Date.  The East Plaintiffs and Committee (if applicable) shall make any necessary filings with the Bankruptcy Court to effectuate said dismissal.

7.8.    **No Admissions**.  The PRAG Settlement, as set forth in this Article 7 of the Plan, constitutes a compromise of disputed claims and defenses.  Accordingly, none of the provisions set forth in this Article 7 of the Plan shall be deemed or construed as an admission of any liability or of the viability of any defense to liability on the part of the Debtor, the Estate, the Committee, PRAG, PRAI, PRAI-Texas, or any other Person.

# ARTICLE 8
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

8.1.    **Rejection of Executory Contracts and Unexpired Leases**.  All contracts and leases constituting executory contracts or unexpired leases under the provisions of Section 365 of the Bankruptcy Code as of the Effective Date which (a) have not been assumed or rejected by the Effective Date, or (b) have not been made the subject of a motion to assume which is pending as of the first date set for the hearing on confirmation of the Plan, shall be deemed rejected as of the Effective Date in accordance with the provisions of Section 365 of the Bankruptcy Code.

8.2.    **Rejection Damage Claims**.  Any Claim arising from the rejection of an executory contract or unexpired lease under the terms of Section 8.1 of the Plan must be evidenced by a proof of claim filed with the Bankruptcy Court and served on the Trustee by no later than twenty (20) days following the Effective Date of the Plan.  Any holder of such a rejection damages Claim that fails to file and serve such a proof of claim on or before said deadline shall be deemed to have waived such Claim in full, and such Claim shall be deemed Disallowed and discharged.

# ARTICLE 9
## DISTRIBUTIONS UNDER THE PLAN

9.1.    **Distributions Made to Holders as of Distribution Record Date**.  All distributions under the Plan on account of Allowed Claims shall be made to (or in the case of Disputed Claims reserved on behalf of) the holders of such Claims as determined as of the Distribution Record Date.

9.2.    **Interim and Final Distributions of Net Available Funds**.  As soon as practicable after the Effective Date, the Trustee shall make an initial distribution of Net Available Funds from the Creditor

Trust to the holders of Allowed Claims within Class 4 of the Plan in accordance with the provisions of Section 4.4.1 of the Plan. Thereafter, the Trustee shall, from time to time as he deems warranted in his reasonable discretion, make additional distributions of Net Available Funds to the holders of Allowed Claims within said Class as Disputed Claims within such Class are finally determined and/or as Net Available Funds are made available for further distributions. If and when all Allowed Claims within Class 4 have been paid in full in accordance with the provisions of Section 4.4.1 of the Plan, then the Trustee shall commence making distributions to the holders of Allowed Subordinated Secured Claims, Allowed Unsecured Lender Claims and Allowed Subordinated Claims pursuant to the provisions of Sections 4.1.2, 4.5.2 and 4.6.1 of the Plan in the same manner. In the case of each of the above-referenced categories of Allowed Claims, prior to making each additional or the final distribution to the holders of Allowed Claims within the particular Class at issue, the Trustee shall recalculate each holder's Pro Rata Share to ensure that each holder of an Allowed Claim within the particular Class will have received, in the aggregate, a Pro Rata Share of the distributions consistent with the treatment provisions of Section 4.1.2, 4.4.1, 4.5.2 or 4.6.1, as the case may be.

9.3. **Form of Distributions**. Any Cash payment to be made pursuant to the Plan may be made by check or wire transfer, at the option of the Trustee, in his sole discretion.

9.4. **Conditions to Distributions; Warranty of Entitlement**. No holder of an Allowed Claim shall be entitled to a distribution under the Plan unless and until such holder provides to the Trustee such holder's taxpayer identification number. Each and every Creditor who receives and accepts a distribution under the Plan on account of an Allowed Claim is deemed to have warranted to the Trustee and the Creditor Trust that such Creditor is the lawful holder of the Allowed Claim, such Creditor is authorized to receive the distribution, and that there are no outstanding commitments, agreements or understandings, express or implied, that may or can, in any way, defeat or modify the right of the Creditor to receive the distribution.

9.5. **Withholding Taxes**. Any federal, state or local withholding taxes or other amounts required to be withheld under applicable law in relation to a distribution under the Plan shall be deducted from the distribution and remitted by the Trustee to the applicable taxing authority(ies). To the extent that this provision affects the holder of a particular Allowed Claim, such holder shall provide to the Trustee all such information as the Trustee requires in order to comply with such law(s), and no distribution shall be made to such holder unless and until such information is provided.

9.6. **Setoffs**. Except as otherwise expressly provided in the Plan, the Trustee may, pursuant to Section 502(d) or 553 of the Bankruptcy Code or any applicable non-bankruptcy law, upon application and approval by the Bankruptcy Court, setoff against any distribution to be made pursuant to the Plan on account of an Allowed Claim any claims, rights or Causes of Action held by the Creditor Trust/Trustee against the holder of the Allowed Claim or in relation to the Allowed Claim; *provided, however*, that neither the failure to effect such a setoff nor the allowance of any Claim shall constitute a waiver or release by the Creditor Trust/Trustee of any such claims, rights or Causes of Action.

9.7. **Rounding**. Where the calculation of a distribution results in a fraction of a cent owing, the calculation shall be rounded down to the nearest whole cent for purposes of paying (or reserving) the distribution.

9.8. *De Minimis* **Distributions**. Notwithstanding any provision of the Plan to the contrary, no distribution of less than two dollars ($2.00) shall be made from the Creditor Trust on account of an Allowed Claim.

9.9.    **Reserves for Disputed Claims**.  Except to the extent that the Bankruptcy Court enters an order determining that a lesser amount is adequate as to a particular Disputed Claim, the Trustee shall deposit into the Disputed Claims Reserve Account an amount of Cash equal to the distribution that would have been made to the holder of such Disputed Claim if such Disputed Claim were an Allowed Claim.  At such time as all or any portion of a Disputed Claim becomes an Allowed Claim, the distribution(s) reserved for such Disputed Claim shall be released from such Disputed Claims Reserve Account and, subject to all other applicable provisions of this Article 9 of the Plan, the Trustee shall pay to the holder of such Claim that amount of the distribution(s) to which the holder is entitled under the terms of Article 3 or 4 of the Plan, as applicable.  Any interest earned on funds deposited in such Disputed Claims Reserve Account shall constitute property of the Creditor Trust and not of the holder of the Claim(s) for which such funds have been reserved.

9.10.    **Litigation and Administrative Expense Reserve**.  In determining the amount of Net Available Funds which are available for distribution to the holders of Allowed Claims within Classes 1, 4 and 5 of the Plan at any particular time, the Trustee shall reserve a sufficient amount of funds, determined by the Trustee in his sole discretion, to enable the Trustee to fund the litigation of any Causes of Action and any objections to Claims that the Trustee is pursuing, or may pursue, and to fund the costs of administering the Creditor Trust until it is terminated, said reserve being the Litigation and Administrative Expense Reserve.

9.11.    **Undeliverable and Unclaimed Distributions**.  Except for distributions of Cash that are made by wire transfer as authorized by Section 9.3 of the Plan, each distribution of Cash to be made under the Plan to the holder of an Allowed Claim shall be delivered to the holder by U.S. first class mail, postage prepaid, using (a) the mailing address identified on the Ballot for such Allowed Claim which is timely submitted by the holder of the Allowed Claim to the Balloting Agent, if applicable, or (b) if no such Ballot is submitted to the Balloting Agent, then the mailing address for the provision of notices stated on the proof of claim filed with the Bankruptcy Court in relation to such Allowed Claim, if applicable, or (c) if no proof of claim was filed with the Bankruptcy Court, the mailing address set forth in the Schedules in relation to such Allowed Claim; *provided, however*, that if an Allowed Claim is transferred to another Person on or before the Distribution Record Date, and such transfer is properly evidenced and effectuated by the filing of a claim transfer notice with the Bankruptcy Court pursuant to Bankruptcy Rule 3001(e) on or before the Distribution Record Date which is not contested, then such distribution shall be delivered to the transferee of the Allowed Claim by U.S. first class mail, postage prepaid, using the mailing address noted on the claim transfer notice.  Any distribution which is returned to the Creditor Trust/Trustee and identified by the U.S. Postal Service as undeliverable without any indication of a forwarding address shall be retained by the Creditor Trust for a period of ninety (90) days from the date of its original mailing unless otherwise ordered by the Bankruptcy Court.  Failure of the holder of the Allowed Claim to come forward and validly make claim to the undelivered distribution by the end of such retention period shall constitute the holder's unconditional and irrevocable waiver of any right to receive the distribution and any further distributions under the Plan on account of such Allowed Claim, and shall constitute the holder's forfeiture to the Creditor Trust of the distribution and any and all future distributions to which the holder would be entitled in relation to such Allowed Claim.  Similarly, unless otherwise ordered by the Bankruptcy Court, failure of the holder of an Allowed Claim to present for payment a distribution check issued by the Creditor Trust (which is not returned to the Creditor Trust/Trustee as undeliverable) within ninety (90) days of the mailing of such distribution shall constitute the holder's unconditional and irrevocable waiver of any right to receive the distribution and any further distributions under the Plan on account of such Allowed Claim, and shall constitute the holder's forfeiture to the Creditor Trust of the distribution and any and all further distributions to which the holder would be entitled in relation to such Allowed Claim.  Forfeited distributions shall be available to fund costs of administration of the Creditor Trust or for the distribution to Creditors consistent with the provisions of Articles 3 and 4 of the Plan.  Neither the Post-Confirmation Debtor nor the Trustee shall have any

obligation to independently undertake any investigation to determine the whereabouts of any holder of an Allowed Claim.

9.12. **Disputed Distributions**.  In the event that a dispute arises as to the rightful owner of an Allowed Claim, thereby calling into question the rightful recipient of a distribution under the Plan, the Creditor Trust/Trustee may, in lieu of making the distribution, either (a) deposit the distribution, if Cash, into a segregated account until a determination is made as to the rightful owner of the distribution by the Bankruptcy Court or by written agreement between each of the Persons making claim to the distribution, or (b) interplead the distribution into the registry of the Bankruptcy Court or such other court having jurisdiction over the disputed distribution and the Persons making claim to such distribution, reserving the right to assert any and all claims that the Creditor Trust/Trustee may have in relation to such interpleader action.

## ARTICLE 10
## PROCEDURES FOR RESOLVING DISPUTED CLAIMS

10.1. **Objections to Claims**.  All objections to Claims must be filed on or before the Claim Objection Deadline.  Any Disputed Claim as to which an objection is not filed on or before the Claim Objection Deadline shall be deemed to constitute an Allowed Claim under the Plan following the Claim Objection Deadline.

10.2. **Post-Confirmation Proofs of Claim and Amendments**.  Except as otherwise expressly contemplated by the Plan, following the later of the Effective Date or the applicable Bar Date, no original or amended proof of claim may be filed in the Bankruptcy Case to assert a Claim against the Debtor without prior authorization of the Bankruptcy Court, and any such proof of claim which is filed without such authorization shall be deemed null, void and of no force or effect; *provided, however*, that the holder of a Claim that has been evidenced in the Bankruptcy Case by the filing of a proof of claim on or before the Bar Date shall be permitted to file an amended proof of claim in relation to such Claim at any time if the sole purpose of the amendment is to reduce the amount of the Claim asserted.

10.3. **Settlement of Disputed Claims**.  Following the Effective Date, and without the necessity of notice and Bankruptcy Court approval, the Trustee shall have the authority to resolve any Disputed Claim which is the subject of a timely-filed objection if the resolution will result in the Claim being Allowed in an amount of no greater than $20,000.00 more than the liquidated, non-disputed and non-contingent amount of the Claim as listed in the Debtor's Schedules.  Any resolution of a Disputed Claim under the above-parameters shall be evidenced by a notice filed with the Bankruptcy Court.  All other settlements involving Disputed Claims to which timely-filed objections have been lodged shall be subject to notice and Bankruptcy Court approval, unless ordered otherwise by the Bankruptcy Court upon separate motion and notice in the Bankruptcy Case.

## ARTICLE 11
## CONDITIONS PRECEDENT TO CONFIRMATION
## AND EFFECTIVENESS OF PLAN

11.1. **Conditions to Confirmation**.  Confirmation of the Plan shall be subject to satisfaction of each of the following conditions precedent:

(a)      The Confirmation Payment has been delivered by PRAI-Texas to the Debtor, in trust, in accordance with the provisions of Section 7.1 of the Plan;

(b)      The Confirmation Order includes findings, or substantially similar findings, (i) that PRAG committed no act or omission that would constitute liability of PRAG

to the Debtor in relation to the March Trades and (ii) that there was no evidence presented of any other act or omission that would cause PRAG to have liability to the Debtor; *provided, however,* that such condition shall be deemed satisfied if, and to the extent, waived in writing by PRAI-Texas;

(c)    The Confirmation Order approves the release of the PRAG Parties referenced in Section 7.5 of the Plan; and

(d)    The Confirmation Order provides for the equitable subordination of the Lenders' Claims so as to enable distribution of the Confirmation Payment and the Subsequent Payments (less the amount of said payments required to satisfy or reserve for Allowed Administrative Claims, Allowed Priority Tax Claims, and Allowed Claims within Classes 2 and 3 of the Plan, and less the amount of said payments reserved by the Trustee as part of the Litigation and Administrative Expense Reserve) solely to the holders of Allowed General Unsecured Claims; *provided, however,* that such condition shall be deemed satisfied if, and to the extent, waived in writing by the Committee and the East Plaintiffs.

11.2.   **Conditions to Effective Date**.  The Plan shall not become effective until each of the following conditions precedent have been satisfied:

(a)    The Confirmation Order has become a Final Order; *provided, however,* that such condition shall be deemed satisfied if waived in writing by the Plan Proponents and PRAI-Texas;

(b)    The Creditor Trust Documentation, creating the Creditor Trust, has been executed by the Debtor, the Trustee and the members of the Creditor Trust Oversight Committee;

(c)    PRAG has executed and delivered to the Debtor the instrument referenced in Section 7.3.1 of the Plan;

(d)    NEWCO has executed and delivered to the Debtor the instrument referenced in Section 7.3.3 of the Plan;

(e)    The Confirmation Payment has been released to the Estate;

(f)    The Debtor and the East Plaintiffs have executed and delivered to PRAG, PRAI and PRAI-Texas the release referenced in Section 7.5 of the Plan;

(g)    PRAG, PRAI and PRAI-Texas have executed and delivered to the Debtor the release referenced in Section 7.6 of the Plan; and

(h)    The East Plaintiffs, by and through their counsel and/or designated agents, have used their best efforts to secure and deliver to PRAG a release(s) pursuant to which each of the Other Growers, effective as of the Effective Date, unconditionally and irrevocably waives, remises, acquits, and fully and forever releases and discharges PRAG and each of its (i) direct and indirect subsidiaries and (ii) officers, directors, shareholders, managers, employees and agents and those of its direct and indirect subsidiaries (collectively, the "Released Parties") from any and all claims which the Other Growers have or ever had against the Released Parties (except that said release(s) shall not release, nor be deemed to constitute a release or waiver of, any of the obligations imposed upon any of the Released Parties pursuant to the Plan); *provided, however,* that such condition shall be deemed satisfied if, and to the extent, waived in writing by PRAI-Texas.

## ARTICLE 12
## EFFECTS OF CONFIRMATION OF PLAN;
## INJUNCTION AND EXCULPATION

12.1.    **Binding Effect of Plan**.  Upon the Effective Date, the Plan and each of its provisions shall be binding on the Plan Proponents, the Post-Confirmation Debtor, the Creditor Trust, the Trustee, all Creditors, all Equity Interest holders, and all Persons acquiring property under the Plan, whether or not they voted to accept the Plan, whether or not they had a right to vote on the Plan, whether or not any Claim or Equity Interest held by any of them is impaired under the Plan, whether or not any Claim or Equity Interest held by any of them is Allowed in full, only in part, or Disallowed in full, and whether or not a distribution is made to any of them under the Plan.

12.2.    **Vesting of Assets**.  Except as expressly otherwise provided in the Plan, on the Effective Date (a) all of the Retained Assets shall re-vest in the Post-Confirmation Debtor free and clear of all Claims, Liens and encumbrances, of any nature whatsoever, and (b) all of the Trust Assets shall be transferred to the Creditor Trust free and clear of all Claims, Liens and encumbrances, of any nature whatsoever.

12.3.    **Injunction Against Interference with Plan**.  Upon the Effective Date, all holders of Claims, all holders of Equity Interests, and all other parties in interest in the Bankruptcy Case, along with their respective current and former officers, directors, principals, employees and agents, shall be and are hereby enjoined from taking any action to interfere with the implementation or consummation of the Plan.

12.4.    **Exculpation**.  The Exculpated Parties shall neither have nor incur any liability to any Person for any action taken or omitted in soliciting acceptances of the Plan, except to the extent expressly provided otherwise by Section 1125(e) of the Bankruptcy Code.

## ARTICLE 13
## MISCELLANEOUS PROVISIONS

13.1.    **Implementation**.  The Plan Proponents, the Post-Confirmation Debtor, and the Trustee shall be, and are hereby, authorized to take any and all necessary steps, and to perform any and all necessary acts, to consummate the Plan in accordance with its terms and conditions.

13.2.    **Modification of Plan**.  Subject to the provisions of Section 1127 of the Bankruptcy Code, the Plan Proponents reserve the right to amend or modify the Plan (a) at any time prior to the Confirmation Date without Bankruptcy Court approval, or (b) at any time after the Confirmation Date, but prior to the Effective Date, with Bankruptcy Court approval.  In the event that the Plan Proponents are required to provide the holders of Claims (or certain of them) the opportunity to re-vote on the Plan, as amended or modified, then each such holder that previously voted to accept or reject the Plan shall be deemed to have cast the same vote for acceptance or rejection, as the case may be, of the Plan, as amended or modified, unless, within the time fixed by the Bankruptcy Court, such holder changes its previously cast vote for acceptance or rejection of the Plan.

13.3.    **Governing Law**.  Except to the extent that the Bankruptcy Code or Bankruptcy Rules are applicable, the rights and obligations arising under the Plan shall be governed by and construed and enforced in accordance with the laws of the State of Texas.

13.4.    **Conflict of Provisions**.  To the extent that any provision of the Disclosure Statement, the Creditor Trust Documentation, or any document executed in connection therewith or in connection with

consummation of the Plan conflicts with, or is in any way inconsistent with, the terms or conditions of the Plan, the terms and conditions of the Plan shall govern and control.

13.5.  **Headings**.  Each heading preceding an article, section or paragraph of the Plan is inserted for convenience only and shall not affect interpretation or construction of the Plan.

13.6.  **Severability**.  The provisions of the Plan shall not be severable unless (a) such severance is agreed to by the Plan Proponents (if prior to the Effective Date) or by the Trustee (if after the Effective Date), and (b) such severance would constitute a permissible modification of the Plan pursuant to Section 1127 of the Bankruptcy Code.

13.7.  **No Admissions**.  The Plan constitutes a compromise of disputed claims and defenses. Accordingly, none of the provisions set forth in the Plan shall be deemed or construed as an admission of any liability or of the viability of any defense to liability on the part of the Debtor, the Estate, the Committee or any other Person.

13.8.  **Entire Agreement**.  The Plan supersedes all previous and contemporaneous agreements, promises, covenants, negotiations, understandings and representations as to all matters set forth in the Plan, all of which have become merged and integrated into the Plan.

13.9.  **Successors and Assigns**.  All of the rights, benefits and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Person.

13.10.  **Computation of Time**.  In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006 shall apply unless otherwise set forth in the Plan or determined by the Bankruptcy Court.

13.11.  **Dissolution of Committee**.  Unless otherwise ordered by the Bankruptcy Court, following the Effective Date the Committee shall be deemed dissolved once all applications for the allowance of Administrative Claims filed by professionals retained by the Debtor and the Committee have been determined by Final Order.  Upon dissolution of the Committee, the Committee, members of the Committee, and the Committee's professionals shall be released and discharged from any further duty or obligation arising under, arising in, or related to the Bankruptcy Case.

13.12.  **Closing of Bankruptcy Case**.  Upon final administration of the Bankruptcy Case, the Trustee shall, at the expense of the Creditor Trust, promptly file all documents required or contemplated by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Bankruptcy Case.

13.13.  **Service of Pleadings and Notices**.  Unless and until otherwise directed, any pleading, notice or other document required or permitted by the Plan to be served on or delivered to the Debtor, the Committee, the Trustee or the U.S. Trustee, as the case may be, shall be sent by U.S. first class mail, postage prepaid, to:

| | |
|---|---|
| Debtor | with copies to: |
| Paul Reinhart, Inc. | Munsch Hardt Kopf & Harr, P.C. |
| Attn: R. Dale Grounds, President | Attn: E. Lee Morris, Esq. |
| 2280 Campbell Creek Blvd., Suite 350 | 500 N. Akard Street, Suite 3800 |
| Richardson, Texas 75082 | Dallas, Texas 75201-6659 |

Committee                                    with copies to:
Official Unsecured Creditors Committee       Rochelle McCullough LLP
Attn: Michael D. East, Chairman              Attn: Michael R. Rochelle, Esq.
35 Alta Vista Cove                           325 N. St. Paul, Suite 4500
Marion, Arkansas 72364                       Dallas, Texas 75201

Trustee
As identified in the Notice filed by the Committee pursuant to Section 6.1.6 of the Plan

United States Trustee
Office of United States Trustee
Attn: George F. McElreath, Esq.
1100 Commerce Street, Room 976
Dallas, Texas 75242

# ARTICLE 14
## PROVISIONS FOR RETENTION OF JURISDICTION

14.1.     **Retention of Jurisdiction**.  From and after the Effective Date, the Bankruptcy Court shall retain jurisdiction, to the fullest extent legally permitted, over the Bankruptcy Case, all proceedings arising under, arising in or related to the Bankruptcy Case, the Confirmation Order, the Plan and administration of the Creditor Trust, including (without limitation) jurisdiction:

(a)     To hear and determine objections to Claims and all other matters relating to the allowance or disallowance of Claims, and to Allow, Disallow, determine, liquidate, classify, estimate and/or establish the priority of a Claim under the Bankruptcy Code and/or Plan;

(b)     To hear and determine applications for the allowance and payment of Administrative Claims and any objections thereto;

(c)     To resolve disputes, if any, related to the assumption or rejection of executory contracts and unexpired leases to which the Debtor is a party, and to hear and determine objections to Claims arising from the rejection of executory contracts and unexpired leases;

(d)     To hear and determine any and all motions, applications, adversary proceedings, and contested or other litigated matters, whether pending on the Effective Date or commenced after the Effective Date, including, without limitation, the Causes of Action transferred to the Creditor Trust under the Plan;

(e)     To enter such orders as may be necessary or appropriate to aid in the implementation or consummation of the provisions of the Plan, the Confirmation Order, the Creditor Trust Documentation, and any contracts, instruments, releases and other agreements or documents entered into or created in connection with the Plan;

(f)     To hear and determine disputes regarding the implementation and consummation of the Plan;

(g)     To hear and determine disputes regarding operation of the Creditor Trust and distributions under the terms of the Plan and Creditor Trust Documentation;

(h)     To hear and determine all controversies, disputes, settlements and suits which may arise in connection with the interpretation or enforcement of the Plan, the Confirmation Order, and the Creditor Trust Documentation;

(i)     To enforce the injunction set forth in Section 12.3 of the Plan and issued by and through the Confirmation Order;

(j)     To consider and approve compromises and settlements in relation to Disputed Claims and in relation to Causes of Action;

(k)     To estimate Disputed Claims for purposes of distributions under the Plan;

(l)     To hear and determine any disputes relating to the transfer or liquidation of assets under the Plan;

(m)     To enter a final decree in the Bankruptcy Case; and

(n)     To hear and determine any other matter not inconsistent with the Bankruptcy Code and Title 28 of the United States Code that may arise in connection with or related to the Plan, the Confirmation Order or the Creditor Trust Documentation.

[Remainder of Page Intentionally Left Blank]

Dated:  August 17, 2009

**PAUL REINHART, INC.**
2280 Campbell Creek Blvd., Suite 350
Richardson, Texas 75082

By: /s/ R. Dale Grounds
    R. Dale Grounds
    President

**MUNSCH HARDT KOPF & HARR, P.C**.
3800 Lincoln Plaza
500 N. Akard Street
Dallas, Texas 75201-6659
Telephone: (214) 855-7500
Facsimile: (214) 855-7584

By: /s/ E. Lee Morris
    E. Lee Morris
    Texas Bar No. 00788079
    Deborah M. Perry
    Texas Bar No. 24002755

**ATTORNEYS FOR PAUL REIHART, INC.,
DEBTOR AND DEBTOR-IN-POSSESSION**


**OFFICIAL UNSECURED CREDITORS' COMMITTEE**

By: /s/ Michael D. East
    Michael D. East
    Chairman

**ROCHELLE McCULLOUGH LLP**
325 N. St. Paul, Suite 4500
Dallas, Texas 75201
Telephone: (214) 953-0182
Facsimile: (214) 953-0185

By: /s/ Sean J. McCaffity
    Michael R. Rochelle
    Texas Bar No. 17126700
    Sean J. McCaffity
    Texas Bar No. 24013122

**ATTORNEYS FOR OFFICIAL UNSECURED
CREDITORS' COMMITTEE**

**EXHIBIT 1**

# PRI CREDITORS TRUST AGREEMENT
## AND DECLARATION OF TRUST

This PRI Creditors Trust Agreement and Declaration of Trust (the "Agreement") is entered into by and between Paul Reinhart, Inc.; ███████████, in his capacity as the initial trustee of the PRI Creditors Trust established hereby (in such capacity, the "Initial Trustee"); and ███████████, ███████████ and ███████████, in their capacity as the initial members of the Creditor Trust Oversight Committee (in such capacity, the "Initial Creditor Trust Oversight Committee Members"); who, by so executing this Agreement, respectively agree to be bound by each of its terms, conditions and obligations as of the Effective Date (as defined below).

## RECITALS

**WHEREAS**, on October 15, 2008, Paul Reinhart, Inc. (the "Debtor") filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code, thereby initiating Case No. 08-35283-HDH-11 (the "Bankruptcy Case") with the United States Bankruptcy Court for the Northern District of Texas (the "Bankruptcy Court"); and

**WHEREAS**, on October 28, 2008, the Official Unsecured Creditors' Committee (the "Committee") was appointed in the Bankruptcy Case; and

**WHEREAS**, on August 17, 2009, the Debtor and the Committee filed the Debtor's and Official Unsecured Creditors' Committee's First Amended Joint Plan of Liquidation Under Chapter 11 of the United States Bankruptcy Code (including all amendments and supplements thereto, the "Plan") in the Bankruptcy Case; and

**WHEREAS**, on or about ███████████, 2010, the Bankruptcy Court entered an order in the Bankruptcy Case approving and confirming the Plan (the "Confirmation Order"); and

**WHEREAS**, the Plan and Confirmation Order provide for, among other things: (a) the establishment of the PRI Creditors Trust (the "Creditor Trust"); (b) the transfer of all of the Trust Assets (as hereinafter defined) to the Creditor Trust; (c) the transfer of all claims against the Debtor and Debtor's estate, and all distribution rights conferred by the Plan on account thereof, to the Creditor Trust; (d) the transfer of all objections, counterclaims, rights of setoff, rights of recoupment, and any and all other defenses held by the Debtor or the Debtor's estate in relation to such claims, in relation to such distribution rights, and in relation to the holders of such claims and distribution rights to the Creditor Trust; (e) the administration of the Creditor Trust by a trustee; (f) the appointment of the Initial Trustee as the initial trustee of the Creditor Trust; (g) the establishment of an oversight committee to, among other things, provide guidance and input to the trustee of the Creditor Trust; (h) the appointment of the Initial Creditor Trust Oversight Committee Members as the initial members of such oversight committee; (i) the terms and conditions applicable to the administration of the Creditor Trust and claims transferred to the Creditor Trust; and (j) the terms and conditions applicable to distributions to be made from the Creditor Trust on account of such claims;

**NOW, THEREFORE**, in order to comply with the terms and conditions of the Plan and Confirmation Order, the Debtor, the Initial Trustee, and the Initial Creditor Trust Oversight Committee members (collectively, the "Parties") hereby agree to the following:

# ARTICLE 1
# DEFINITIONS

Unless the context otherwise requires, capitalized terms within this Agreement shall have the meanings assigned to them in this Article 1 of the Agreement. Such meanings shall be equally applicable to both the singular and plural forms of such terms. The words "herein," "hereof," "hereunder" and other words of similar import refer to this Agreement as a whole and not to any particular article, section or clause contained in this Agreement unless the context requires otherwise. Whenever it appears appropriate from the context, each term stated in the masculine, feminine or neuter gender shall include the masculine, feminine and neuter. Any capitalized term within this Agreement that is not defined below shall have the meaning assigned to such term in Article 1 of the Plan, or, if not defined in said article of the Plan, then in the Bankruptcy Code or Bankruptcy Rules.

"<u>Administrative Claim</u>": Shall have the meaning assigned to such term in the Plan.

"<u>Agreement</u>": This PRI Creditors Trust Agreement and Declaration of Trust.

"<u>Allowed</u>": Shall have the meaning assigned to such term in the Plan.

"<u>Assets</u>": All right, title and interest in and to any and all property of every kind or nature, whether tangible or intangible, owned by the Debtor or Estate as of the Effective Date, including, but not limited to, Causes of Action and the Confirmation Payment, but expressly excluding the Retained Assets.

"<u>Bank Agent</u>": Shall have the meaning assigned to such term in the Plan.

"<u>Bankruptcy Case</u>": The case commenced in the Bankruptcy Court under Chapter 11 of the Bankruptcy Code by the Debtor's filing of its voluntary petition on October 15, 2008, Case No. 08-35283-HDH-11.

"<u>Bankruptcy Code</u>": Title 11 of the United States Code, as applicable to the Bankruptcy Case as of October 15, 2008, plus any and all amendments thereto which have been made or are hereafter made retroactively applicable to the Bankruptcy Case.

"<u>Bankruptcy Court</u>": The United States Bankruptcy Court for the Northern District of Texas, Dallas Division, or in the event such court ceases to exercise jurisdiction over the Bankruptcy Case, the United States District Court for the Northern District of Texas or any adjunct thereof which comes to exercise jurisdiction over the Bankruptcy Case.

"<u>Bankruptcy Rules</u>": The Federal Rules of Bankruptcy Procedure, as amended and prescribed under Section 2075, Title 28, United States Code, as applicable to the Bankruptcy Case, together with the Local Rules of the Bankruptcy Court.

"<u>Cash</u>": Lawful currency of the United States of America and its equivalents.

"<u>Causes of Action</u>": Any and all causes of action, claims, rights of action, suits or proceedings, whether in law or in equity, whether known or unknown, which have been or could be asserted by the Debtor or the Estate, as of the Effective Date, including, without limitation, all of the Causes of Action referenced in Section XI(C) of the Disclosure Statement.

"<u>Claim</u>": Shall have the meaning assigned to such term in the Plan.

"<u>Class</u>": Shall have the meaning assigned to such term in the Plan.

"<u>Collateral</u>": Shall have the meaning assigned to such term in the Plan.

"Confirmation Order": That certain order entered by the Bankruptcy Court on or about _____, 2010, pursuant to which the Plan was approved and confirmed pursuant to Section 1129 of the Bankruptcy Code.

"Confirmation Payment": The payment made by PRAI Texas, Inc. to the Estate in accordance with the provisions of Section 7.2 of the Plan.

"Creditor Trust": The trust created pursuant to this Agreement.

"Creditor Trust Beneficiaries": Collectively, the Secured Trust Beneficiaries, the Priority Trust Beneficiaries, and the Non-Priority Trust Beneficiaries.

"Creditor Trust Oversight Committee": The oversight committee of the Creditor Trust established in accordance with the provisions of Section 6.1.11 of the Plan, the Confirmation Order, and Article 5 of this Agreement.

"Debtor": Paul Reinhart, Inc.

"Disclosure Statement": The Joint Disclosure Statement Pursuant to 11 U.S.C. § 1125 in Support of Debtor's and Official Unsecured Creditors' Committee's First Amended Joint Plan of Liquidation Under Chapter 11 of the United States Bankruptcy Code, issued in connection with the Debtor's and Official Unsecured Creditors' Committee's First Amended Joint Plan of Liquidation Under Chapter 11 of the United States Bankruptcy Code and approved by the Bankruptcy Court, together with all exhibits, amendments and supplements thereto that have been approved by the Bankruptcy Court.

"Disputed": Shall have the meaning assigned to such term in the Plan.

"Disputed Claims Reserve Account": An interest-bearing account of the Creditor Trust which is established and maintained by the Trustee in accordance with the provisions of Section 3.4.1 of this Agreement.

"Distribution Record Date": _____, 2009.

"Effective Date": _____, 2010.

"Estate": The estate of the Debtor created on the Petition Date pursuant to, and consisting of all property interests described in or provided by, Section 541 of the Bankruptcy Code, including, without limitation, all property interests becoming part of such estate after the Petition Date in accordance with Section 541 of the Bankruptcy Code.

"Initial Creditor Trust Oversight Committee Members": _____, _____, and _____, in their capacity as the initially-appointed members of the Creditor Trust Oversight Committee.

"Initial Trustee": _____, in his capacity as the initially-appointed trustee of the Creditor Trust.

"Lenders": Shall have the meaning assigned to such term in the Plan.

"Litigation and Administrative Expense Reserve": The reserve established and maintained by the Trustee in accordance with the provisions of Section 3.4.2 of this Agreement.

"Net Available Funds": At any given time, the Cash on hand in the Creditor Trust, excluding funds on deposit in the Disputed Claims Reserve Account and the Litigation and Administrative Expense Reserve.

"Non-Priority Trust Beneficiaries": Holders of Allowed Subordinated Secured Claims within Class 1 and Allowed Claims within Classes 4, 5 and 6 under the Plan, subject to the provisions of Section 4.4 of this Agreement.

"Pension Plan": That certain Paul Reinhart, Inc. Employees Defined Benefit Pension, established by the Debtor on or about July 1, 1990 (as amended and restated from time to time).

"Permitted Investments": Investments in the form of the deposit of funds into interest-bearing accounts or the acquisition of demand or time deposits, such as short-term certificates of deposit, maintained at banks or other savings institutions providing adequate protection for such investments, or in the form of the acquisition of United States Treasury Bills, provided that in each such case such investments shall be prudent and appropriate under the circumstances, and in such amounts and upon such terms as a reasonable and prudent fiduciary would select with a view toward sufficient liquidity to make distributions to Creditor Trust Beneficiaries within the time frames, and under the terms and conditions, dictated by this Agreement and the Plan.

"Person": An individual, corporation, partnership, joint venture, trust, estate, unincorporated association, unincorporated organization, governmental entity or political subdivision therefore, or any other entity.

"Plan": The Debtor's and Official Unsecured Creditors' Committee's First Amended Joint Plan of Liquidation Under Chapter 11 of the United States Bankruptcy Code (including all amendments and supplements thereto), approved and confirmed by the Confirmation Order.

"Post-Confirmation Debtor": The Debtor, following the Effective Date.

"Priority Tax Claim": Shall have the meaning assigned to such term in the Plan.

"Priority Trust Beneficiaries": Holders of Allowed Administrative Claims, Allowed Priority Tax Claims and Allowed Claims within Class 3 under the Plan, subject to the provisions of Section 4.4 of this Agreement.

"Pro Rata Share": Shall have the meaning assigned to such term in the Plan.

"Retained Assets": All books and records of the Debtor, whether in paper or electronic format, which the Post-Confirmation Debtor, in its sole and absolute discretion, determines it must retain after the Effective Date in order to wind-up its remaining affairs and formally terminate its existence.

"Secured Claim": Shall have the meaning assigned to such term in the Plan.

"Secured Trust Beneficiaries": Holders of non-subordinated Allowed Secured Claims of Lenders within Class 1 and Allowed Claims within Class 2 under the Plan, subject to the provisions of Section 4.4 of this Agreement.

"Subordinated Secured Claim": Shall have the meaning assigned to such term in the Plan.

"Subsequent Payments": Those certain payments made by _____ to the Creditor Trust in accordance with the provisions of Section 7.3.2 of the Plan.

"Successor Trustee": An individual appointed to serve as trustee of the Creditor Trust in the event of the death, resignation or discharge of the previously-appointed Trustee. From and after the appointment of a Successor Trustee, all references herein to the Trustee shall apply to the Successor Trustee.

"Trust Asset Funds": Trust Assets in the form of Cash.

"Trust Assets": Collectively, the Assets and Subsequent Payments, and all income derived thereof.

"Trustee": The trustee of the Creditor Trust.

## ARTICLE 2
## CREATION OF THE CREDITOR TRUST

2.1.    Purpose of the Creditor Trust.  In compliance with the Plan and Confirmation Order, the Debtor hereby constitutes and creates the Creditor Trust for the purpose of receiving the Assets and the Subsequent Payments, liquidating the Assets (except to the extent provided otherwise in the Plan), and distributing the Trust Assets in accordance with the provisions of this Agreement and the Plan, with no objective for the Creditor Trust to engage in the conduct of a trade or business.  The activities of the Creditor Trust shall be those reasonably necessary to, and consistent with, the accomplishment of said purpose, but shall not include the conduct of a trade or business.

2.2.    Acceptance by Initial Trustee.  The Initial Trustee does hereby accept the appointment to act and serve as the Trustee and to hold and administer the Trust Assets pursuant to the terms of this Agreement, the Plan and the Confirmation Order.

2.3.    Name of the Creditor Trust.  The Creditor Trust established hereby shall bear the name "PRI Creditors Trust."  In connection with the exercise of the powers of the trustee of the Creditor Trust, the Trustee may use such name, or such variations thereof, as the Trustee sees fit, or may use his own name, as trustee of the Creditor Trust.

2.4.    Transfer of Assets to the Creditor Trust.  In accordance with the provisions of the Plan and Confirmation Order, the Debtor, individually and on behalf of the Estate, hereby grants, releases, assigns, transfers, conveys and delivers the Assets to the Creditor Trust, in trust, to be applied in accordance with the provisions set forth in this Agreement and the Plan.  All of the Assets shall be held and managed by the Trustee pursuant to this Agreement.  The Post-Confirmation Debtor shall from time to time, as and when reasonably requested by the Trustee, execute and deliver to the Trustee all such confirmatory instruments or other documents, in recordable form where necessary or appropriate, and shall take or cause to be taken such further or other actions as the Trustee deems necessary or appropriate, in order to vest or perfect in or confirm to the Creditor Trust title to and possession of the Assets.

2.5.    Transfer of Claims to Creditor Trust.  In accordance with the provisions of Section 6.1.3 of the Plan, all Claims against the Debtor and the Estate, and all distribution rights conferred by the Plan on account thereof, are transferred to and assumed by the Creditor Trust; *provided, however,* that such Claims and distribution rights shall be subject to any and all objections, counterclaims, rights of setoff, rights of recoupment, and any and all other defenses held by the Debtor or the Estate in relation to such Claims, in relation to such distribution rights, and in relation to the holders of such Claims and distribution rights, all of which are preserved and also transferred by the Debtor, individually and on behalf of the Estate, to the Creditor Trust.

2.6.    Tax Treatment.  For federal income tax purposes, the Creditor Trust shall be considered a grantor trust of which the Debtor is the grantor, and the Creditor Trust shall not have any separate liability for federal income taxes relating to, or arising from, the conveyance, liquidation or other administration of the Trust Assets.

## ARTICLE 3
## RIGHTS, POWERS AND DUTIES OF TRUSTEE

3.1.    <u>Management of the Creditor Trust</u>.  The Trustee shall take charge of the Assets and shall endeavor to collect, conserve, protect and (except to the extent expressly provided otherwise in the Plan) liquidate or otherwise convert into Cash all of the Assets, including, without limitation, Causes of Action, claims and other assets comprising the Trust Assets, and all such other property incidental thereto as may hereafter be acquired from time to time by the Creditor Trust.  Except as otherwise expressly provided in this Agreement and the Plan, the Trustee may control and exercise authority over the Trust Assets and the acquisition, management and disposition thereof, and over the management and conduct of the administration of the Creditor Trust, to the same extent as if the Trustee were the sole legal and beneficial owner thereof in his own right.  To this end, the Trustee shall have full right, power and discretion to manage the affairs of the Creditor Trust and to take any action consistent with the purpose and provisions of this Agreement, the Plan and the Confirmation Order, including, without limitation:

(a)    To accept the Assets and the Subsequent Payments transferred to the Creditor Trust pursuant to this Agreement and the Plan;

(b)    To abandon any Trust Asset that is determined by the Trustee to be of inconsequential, or negative, value to the Creditor Trust and Creditor Trust Beneficiaries;

(c)    To negotiate and consummate sales of Trust Assets;

(d)    To enter into agreements and covenants binding the Creditor Trust;

(e)    To execute, acknowledge and deliver any and all instruments which are necessary, required, or deemed by the Trustee to be advisable in connection with the performance of the Trustee's duties hereunder, including, without limitation, deeds, bills of sale, and assignments;

(f)    To endorse the payment of notes or other obligations of any Person or make contracts with respect thereto;

(g)    To establish such bank accounts as required under the Plan and as otherwise deemed necessary or appropriate, and draw checks on and otherwise transfer funds from such accounts consistent with provisions of this Agreement and the Plan;

(h)    To invest Trust Assets in Permitted Investments;

(i)    To pay all lawful expenses, debts, charges and liabilities of the Creditor Trust, including, without limitation, all amounts required by Section 6.7 of the Plan and Section 3.16 of this Agreement to facilitate the lawful standard termination of the Pension Plan, all reasonable costs incurred by the Trustee in winding up and dissolving the Post-Confirmation Debtor, and all taxes assessed against the Post-Confirmation Debtor in connection with the liquidation of Trust Assets, if applicable;

(j)    To pay all taxes, make all tax withholdings, file all tax returns and tax information returns, and make all tax elections by and on behalf of the Creditor Trust, to the extent required or deemed necessary or appropriate by the Trustee;

(k)    To establish such reserves as are required or permitted under the terms of this Agreement and the Plan;

(l)    To purchase insurance coverage in such amounts, if any, as deemed advisable by the Trustee to protect the Creditor Trust and the Trust Assets;

(m)      To participate in and initiate any proceedings before the Bankruptcy Court or any other court, or in any administrative, arbitrative or other non-judicial proceeding, to pursue claims by or on behalf of or involving, or to defend in response to claims against, the Creditor Trust and/or the Trustee on behalf of the Creditor Trust, including, without limitation: (i) Causes of Action; (ii) objections to Claims; and (iii) all other claims, counterclaims, cross-claims, rights of setoff, rights of recoupment, and defenses;

(n)      To settle Claims, objections to Claims, Causes of Action, and any and all other disputes involving the Creditor Trust, the Trust Assets, Claims, distributions from the Creditor Trust, and any and all matters related thereto; *provided, however*, that the settlement of Disputed Claims shall be subject to the provisions of Section 10.3 of the Plan;

(o)      To select and employ such professionals, agents or employees as the Trustee deems necessary to assist in the administration of the Creditor Trust, and to compensate such Persons and reimburse such Persons for out-of-pocket expenses incurred by them on reasonable terms agreed to by the Trustee, subject to the provisions of Section 3.9 of this Agreement;

(p)      To make any and all elections under the provisions of Sections 4.1.3 and 4.2.1 of the Plan, and to perform in accordance with such elections;

(q)      To distribute Trust Asset Funds to Secured Trust Beneficiaries (as applicable) and Priority Trust Beneficiaries in accordance with the terms of this Agreement and the Plan;

(r)      To distribute Net Available Funds to Non-Priority Trust Beneficiaries in accordance with the terms of this Agreement and the Plan;

(s)      To enforce the provisions of this Agreement, the Plan and the Confirmation Order;

(t)      To cause the Creditor Trust to indemnify the Trustee against actual or asserted liability in connection with his administration of the Creditor Trust, except to the extent that his actions or omissions constitute gross negligence or willful misconduct;

(u)      To cause the Creditor Trust to indemnify the members of the Creditor Trust Oversight Committee against actual or asserted liability in connection with their service on the Creditor Trust Oversight Committee, except to the extent that their actions or omissions constitute gross negligence or willful misconduct;

(v)      To take any and all other actions as are necessary or deemed appropriate in the Trustee's discretion to accomplish the purposes of the Creditor Trust, this Agreement, the Plan and the Confirmation Order.

3.2.    <u>Standing to Pursue Causes of Action, Other Claims, Objections and Defenses</u>.  Pursuant to Sections 6.1.3 and 6.5 of the Plan and Section 1123(b)(3) of the Bankruptcy Code, the Trustee shall independently have standing, or alternatively have standing as the appointed representative of the Debtor/Estate: (a) to assert, prosecute and settle any and all Causes of Action; and (b) to assert, prosecute and settle any and all objections, counterclaims, rights of setoff, rights of recoupment, and other defenses to Claims; *provided, however*, that the settlement of Disputed Claims shall be subject to the provisions of Section 10.3 of the Plan.

3.3.    <u>Distribution of Trust Assets</u>

3.3.1.    *Distributions to Secured Trust Beneficiaries*.  Subject to Section 4.5 of this Agreement (including all subsections): (i) in the event the Trustee elects to satisfy a non-subordinated Allowed Secured Claim of a Lender pursuant to the provisions of Section 4.1.3(a) of

the Plan, the Trustee shall distribute that amount of the Trust Asset Funds to the holder of such Allowed Secured Claim as is required to satisfy the Allowed Secured Claim in accordance with the provisions of Section 4.1.3(a) of the Plan; (ii) in the event the Trustee elects to satisfy a non-subordinated Allowed Secured Claim of a Lender pursuant to the provisions of Section 4.1.3(b) of the Plan, the Trustee shall transfer the Collateral securing such Allowed Secured Claim to the Bank Agent in accordance with the provisions of Section 4.1.3(b) of the Plan; (iii) in the event the Trustee elects to satisfy an Allowed Secured Claim within Class 2 under the Plan pursuant to the provisions of Section 4.2.1(a), Section 4.2.1(b), or Section 4.2.1(c) of the Plan, the Trustee shall distribute that amount of the Trust Asset Funds to the holder of such Allowed Secured Claim as is required to satisfy the Allowed Secured Claim in accordance with the provisions of Section 4.2.1(a), Section 4.2.1(b), or Section 4.2.1(c) of the Plan, as applicable; and (iv) in the event the Trustee elects to satisfy an Allowed Secured Claim within Class 2 under the Plan pursuant to the provisions of Section 4.2.1(d) of the Plan, the Trustee shall transfer the Collateral securing such Allowed Secured Claim to the holder of such Allowed Secured Claim in accordance with the provisions of Section 4.2.1(d) of the Plan.

3.3.2. *Distributions to Priority Trust Beneficiaries.* Subject to Section 4.5 of this Agreement (including all subsections), the Trustee shall distribute that amount of the Trust Asset Funds to the Priority Trust Beneficiaries as is required to satisfy the Allowed Claims held by such Priority Trust Beneficiaries in accordance with the provisions of Sections 3.1.1, 3.2.1, and 4.3.1 of the Plan, as applicable.

3.3.3. *Distributions to Non-Priority Trust Beneficiaries.* Subject to Section 4.5 of this Agreement (including all subsections), the Trustee shall distribute Net Available Funds to the Non-Priority Trust Beneficiaries in accordance with the provisions of Sections 4.1.2, 4.4.1, 4.5.2, and 4.6.1 of the Plan, as applicable.

3.4.    Establishment of Reserves

3.4.1. *Establishment of Reserve for Disputed Claims.* Except to the extent that the Bankruptcy Court enters an order determining that a lesser amount is adequate as to a particular Disputed Claim under the Plan, the Trustee shall deposit into the Disputed Claims Reserve Account an amount of Cash equal to the distribution that would have been made to the holder of such Disputed Claim if such Disputed Claim were an Allowed Claim. At such time as all or any portion of a Disputed Claim becomes an Allowed Claim, the distribution(s) reserved for such Disputed Claim shall be released from the Disputed Claims Reserve Account and, subject to the provisions of Section 4.5 of this Agreement (including all subsections), the Trustee shall pay to the holder of such Allowed Claim that amount of the distribution(s) to which the holder is entitled under the terms of Article 3 or Article 4 of the Plan, as applicable. Any interest earned on the funds deposited in the Disputed Claims Reserve Account shall constitute property of the Creditor Trust and not the holder of the Claim(s) for which such funds have been reserved.

3.4.2. *Establishment of Litigation and Administrative Expense Reserve.* In determining the amount of Net Available Funds which are available for distribution to Non-Priority Trust Beneficiaries holding Allowed Claims at any particular time, the Trustee shall reserve a sufficient amount of funds, determined by the Trustee in his sole discretion, to ensure that the Trustee will be capable of funding the litigation of any Causes of Action and any objections to Claims that the Trustee is pursuing, or may pursue, and be capable of funding the costs of administering the Creditor Trust until it is terminated.

3.5. <u>Filing of Tax Returns and Payment of Taxes</u>.  The Trustee shall make all tax withholdings required by law, shall timely file all required federal, state and local tax returns, and shall promptly pay all taxes determined to be due.  The Trustee may establish a reserve, in an amount deemed sufficient in his sole discretion, to pay for any accrued or potential tax liability arising out of the administration of the Creditor Trust and/or the Creditor Trust's ownership of the Trust Assets.

3.6. <u>Books and Records</u>.  The Trustee shall keep or cause to be kept books and records detailing all receipts, disbursements and reserves in the administration of the Creditor Trust, and such books and records shall be open to inspection at all reasonable times upon reasonable request of any Creditor Trust Beneficiary or Creditor Trust Oversight Committee member.  The Trustee shall also keep or cause to be kept a register of Creditor Trust Beneficiaries in compliance with Section 4.2 of this Agreement.

3.7. <u>Reporting</u>.  As soon as practicable after the end of each year of administration of the Creditor Trust, the Trustee shall prepare and provide to the Creditor Trust Oversight Committee an unaudited written report and account reflecting (a) the assets and liabilities of the Creditor Trust as of the end of such year of administration, (b) any changes in the Trust Assets which have not been previously reported, and (c) any material action taken by the Trustee in the performance of his duties and obligations under this Agreement which has not previously been reported.  Similarly, as soon as practical after termination of the Creditor Trust, the Trustee shall prepare and provide to the Creditor Trust Oversight Committee an unaudited written report and account summarizing the disposition of the Trust Assets.  The Trustee shall also furnish to Creditor Trust Beneficiaries receiving distributions from the Creditor Trust such information as is reasonably requested by them to determine their federal and/or state tax liability, if any, attributable to the Trust Assets and/or distributions.

3.8. <u>Compensation and Reimbursement of Expenses</u>.  For services rendered by the Trustee in administering the Creditor Trust, the Trustee shall be compensated on an hourly basis, based upon the hourly rate which the Trustee customarily charges to his other clients.  The Trustee shall also be reimbursed for all reasonable out-of-pocket expenses incurred in the performance of his duties and obligations in administering the Creditor Trust.  Compensation and reimbursement of the Trustee shall be made solely and exclusively from the Trust Assets.  Prior to the payment of any such compensation and/or the reimbursement of expenses, the Trustee shall provide a copy of his invoice(s) reflecting such charges to the Creditor Trust Oversight Committee, which shall have ten (10) days from the date of service thereof to object to same.  Any such objection shall be in writing and identify the particular fees and/or expenses which are objectionable.  Those fees and expenses which are not identified as objectionable may be paid following the ten-day period.  With respect to those fees and expenses which are timely identified as objectionable, the Trustee and the Creditor Trust Oversight Committee shall, in good faith, attempt to resolve the objections.  If, and to the extent, such objections are not resolved, such dispute shall be resolved by the Bankruptcy Court.

3.9. <u>Selection and Compensation of Agents</u>.  The Trustee may, and is expressly authorized hereby to, employ such Persons as the Trustee deems necessary to assist him in the administration of the Creditor Trust, and to compensate such Persons and reimburse such Persons for out-of-pocket expenses incurred by them on reasonable terms agreed to by the Trustee.  Compensation and reimbursement of such Persons shall be made solely and exclusively from the Trust Assets.  Prior to the payment of any such compensation and/or the reimbursement of expenses of such a Person, the Person shall provide a copy of its invoice(s) reflecting such charges to the Creditor Trust Oversight Committee, which shall have ten (10) days from the date of service thereof to object to same.  Any such objection shall be in writing and identify the particular fees and/or expenses which are objectionable, and a copy of the written objection shall be provided to the Trustee in addition to the Person.  Those fees and expenses which are not identified as objectionable may be paid following the ten-day period.  With respect to those fees and

expenses which are timely identified as objectionable, the Person, the Trustee and the Creditor Trust Oversight Committee shall, in good faith, attempt to resolve the objections. If, and to the extent, such objections are not resolved, such dispute shall be resolved by the Bankruptcy Court. Nothing herein is intended to limit, in any way, the Trustee's right to independently dispute and/or object to any of the fees or expenses of such a Person.

3.10. <u>Exercise of Power</u>. Except to the extent otherwise expressly provided by this Agreement, the Trustee shall not be required to procure the authorization of any court in the exercise of any of the powers conferred upon him by this Agreement. No Person dealing with the Creditor Trust shall be obligated to inquire into the authority of the Trustee in connection with the acquisition, management or disposition of Trust Assets.

3.11. <u>Liability of Trustee</u>

3.11.1. *Standard of Care*. Provided the Trustee acts in good faith, the Trustee shall not personally be liable for any of his actions or omissions in the administration of the Creditor Trust.

3.11.2. *Reliance on Documents and Advice of Counsel*. Except as otherwise expressly provided by this Agreement, the Trustee may rely on, and shall be protected in acting upon, any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order or other paper or document believed by him to be genuine and to have been signed or presented by the proper party(ies). As to all legal matters, the Trustee shall be entitled to rely upon the advice and opinions of his counsel.

3.11.3. *No Implied Obligations*. The Trustee's duties and obligations are limited to those expressly set forth in this Agreement and the Plan, and there shall be no implied duties, obligations or covenants.

3.11.4. *Recourse for Creditor Trust Obligations Limited to Creditor Trust*. No recourse shall ever be had, directly or indirectly, against the Trustee, in his individual capacity, by legal or equitable proceedings or otherwise, by virtue of any contract, agreement, promise, undertaking, covenant, instrument or other writing executed by the Trustee on behalf of the Creditor Trust for any authorized purpose in the administration of the Creditor Trust, it being expressly understood and agreed that all such liabilities, whether in writing or otherwise, shall be enforceable, to the extent valid, only against, and shall be satisfied only from, the Creditor Trust.

3.11.5. *No Liability for Acts of Predecessors*. No Successor Trustee shall be in any way responsible for the acts or omissions of any Trustee in office prior to the date on which such Successor Trustee becomes the newly-appointed Trustee, unless and to the extent that such Successor Trustee expressly assumes such responsibility.

3.12. <u>Indemnification</u>. Provided the Trustee acts in good faith, the Trustee shall not personally be liable for any of his actions or omissions in the administration of the Creditor Trust. The Creditor Trust shall indemnify the Trustee against any and all claims, causes of action and liability, including all expenses and defense costs, associated with, and shall hold harmless the Trustee as to, his actions and omissions in administering the Creditor Trust, except to the extent such actions or omissions constitute gross negligence or willful misconduct on the part of the Trustee. In the event that any legal proceeding is instituted against the Trustee, in his individual capacity, on account of any actions or omissions taken by the Trustee in administering the Creditor Trust, then prior to the final disposition of such action, the Trustee shall be entitled to have the Creditor Trust advance to the Trustee such fees and costs as are reasonably incurred by the Trustee in defending against such action, provided Trustee first (a)

executes an affidavit attesting to the fact that he has acted in good faith and has not taken any actions constituting gross negligence or willful misconduct, and (b) executes an instrument whereby he promises to reimburse to the Creditor Trust such advanced amounts in the event that the final disposition of such action includes a finding that the Trustee failed to act in good faith, was grossly negligent, or took any action constituting willful misconduct in connection with administration of the Creditor Trust.

3.13.   Bond Requirement.   No bond shall be required of the Trustee to secure the proper performance of his duties and obligations under this Agreement.

3.14.   Resignation.   The Trustee may resign as trustee of the Creditor Trust by executing and delivering an instrument in writing to the Creditor Trust Oversight Committee evidencing such resignation; *provided, however*, that (a) the Trustee shall continue to serve, and shall not be relieved of any of the duties and obligations set forth herein, until such time as a Successor Trustee is appointed in accordance with the provisions of Section 5.3.4 of this Agreement; and (b) the obligations set forth within Section 3.15 of this Agreement shall be continuing and, notwithstanding the appointment of a Successor Trustee, the Trustee shall not be relieved of his responsibility to fully and promptly comply with such obligations.

3.15.   Obligations Upon Death, Resignation or Discharge.   In the event of the death, resignation or discharge of the Trustee, upon the appointment of a Successor Trustee by the Creditor Trust Oversight Committee, the Trustee and/or his representative(s) shall promptly: (a) execute and deliver to the Successor Trustee all such documents, instruments and other writings as are reasonably requested by the Successor Trustee to evidence the termination of the Trustee as trustee of the Creditor Trust; (b) execute and deliver to the Successor Trustee all such documents, instruments and other writings as are reasonably requested by the Successor Trustee to convey control of the Trust Assets from the Trustee to the Successor Trustee; (c) in the event that the Post-Confirmation Debtor has not yet been formally terminated, execute and deliver to the Successor Trustee all such documents, instruments and other writings as are required to effectuate (i) the substitution of the Successor Trustee as the Post-Confirmation Debtor's President, sole member of the board of directors, and person authorized to wind up the Post-Confirmation Debtor's affairs and execute and file all necessary documents to formally terminate the Post-Confirmation Debtor's existence, and (ii) the resignation of the Trustee as the Post-Confirmation Debtor's President; (d) deliver to the Successor Trustee all documents, instruments, records, electronically stored data, and other written materials compiled by or at the direction of the Trustee in connection with the Trustee's administration of the Creditor Trust; (e) deliver to the Successor Trustee all documents, instruments, records, electronically stored data, and other written materials compiled by or at the direction of the Trustee in connection with the wind-up and termination of the Debtor; and (f) otherwise assist and cooperate with the Successor Trustee in effecting the transfer of all obligations and functions of the Trustee in relation to the Creditor Trust to the Successor Trustee.

3.16.   Transfer of Funds to Facilitate Termination of Pension Plan.   Pursuant to Section 6.7 of the Plan, unless the Pension Plan has previously been lawfully terminated prior to the Effective Date, following the Effective Date, the Trustee shall cooperate with the Post-Confirmation Debtor in connection with the Post-Confirmation Debtor's efforts to effectuate a standard termination of the Pension Plan under applicable provisions of Title IV of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1301-1461, and any associated regulations. In connection therewith, if and to the extent the Pension Plan is underfunded on a termination basis, the Trustee shall transfer to the Pension Plan, on behalf of the Post-Confirmation Debtor, that amount of Cash from the Creditor Trust as is required to obtain all requisite governmental, regulatory, and Pension Benefit Guaranty Corporation approvals for such standard termination. The Trustee shall reserve a sum sufficient from the Trust Asset Funds to make such transfer, and such reserved sum shall constitute part of the Litigation and Administrative Expense Reserve.

# ARTICLE 4
## RIGHTS, POWERS AND DUTIES OF CREDITOR TRUST BENEFICIARIES

4.1. <u>Interests of Creditor Trust Beneficiaries</u>. The Creditor Trust Beneficiaries shall have beneficial interests in the Trust Assets; *provided, however*, that each Creditor Trust Beneficiary's beneficial interest shall be limited solely to those Trust Assets from which the Creditor Trust Beneficiary's Allowed Claim may be satisfied in accordance with the provisions of this Agreement and the Plan. The ownership of a beneficial interest in the Trust Assets shall not entitle any Creditor Trust Beneficiary to claim title in or to any of the Trust Assets, to call for a partition or division of any of the Trust Assets, or to require an accounting, except as expressly and specifically required by the terms of this Agreement.

4.2. <u>Evidence of Beneficial Interest</u>. The beneficial interests of the Creditor Trust Beneficiaries shall not be evidenced by any certificate, security, receipt or other writing. The Trustee shall at all times, however, maintain a register reflecting the names and addresses of all Creditor Trust Beneficiaries and their respective Allowed Claims and amounts or percentages of beneficial ownership in the Trust Assets.

4.3. <u>Exemption from Registration</u>. The Parties hereto intend that the rights of the Creditor Trust Beneficiaries arising under this Agreement shall not be "securities" under applicable law, but none of the Parties hereto represent or warrant that such rights shall not be treated as securities by Persons not a party to this Agreement, nor do the Parties represent or warrant that such rights, if treated as securities, are exempt from registration under applicable securities laws. Should such rights be treated as securities, however, the Parties intend for the exemption to registration provided by 11 U.S.C. § 1145 to apply.

4.4. <u>Transferability</u>. Except as otherwise expressly provided in this Agreement or in the Plan, all distributions from the Creditor Trust on account of Allowed Claims shall be made to (or in the case of Disputed Claims, reserved on behalf of) the holders of such Claims as determined as of the Distribution Record Date.

4.5. <u>Distributions Rights and Requirements</u>

4.5.1. *Conditions to Distributions; Warranty of Entitlement*. No Creditor Trust Beneficiary shall be entitled to a distribution from the Creditor Trust unless and until such Creditor Trust Beneficiary provides to the Trustee such Creditor Trust Beneficiary's tax identification number. Each and every Person who receives and accepts a distribution from the Creditor Trust on account of an Allowed Claim is deemed to have warranted to the Trustee and Creditor Trust that such Person is the lawful holder of the Allowed Claim, such Person is authorized to receive the distribution, and that there are no outstanding commitments, agreements or understandings, express or implied, that may or can, in any way, defeat or modify the Person's right to receive the distribution.

4.5.2. *Withholding Taxes*. Any federal, state or local withholding taxes or other amounts required to be withheld under applicable law in relation to a distribution from the Creditor Trust shall be deducted from the distribution and remitted by the Trustee to the applicable taxing authority(ies). To the extent that this provision affects a Creditor Trust Beneficiary, such Creditor Trust Beneficiary shall provide to the Trustee all such information as the Trustee requires in order to comply with such law(s), and no distribution shall be made to such Creditor Trust Beneficiary unless and until such information is provided.

4.5.3. *Setoffs*. Except as otherwise expressly provided in this Agreement or the Plan, the Trustee may, pursuant to Section 502(d) or 553 of the Bankruptcy Code or any applicable non-bankruptcy law, upon application and approval by the Bankruptcy Court, setoff against any distribution to be made from the Creditor Trust on account of an Allowed Claim any claims, rights or Causes of Action held by the Creditor Trust/Trustee against the holder of the Allowed Claim or in relation to the Allowed Claim; *provided, however*, that neither the failure to effect such a setoff nor the allowance of any Claim shall constitute a waiver or release by the Creditor Trust/Trustee of any such claims, rights or Causes of Action.

4.5.4. *Forms of Distributions*. Any Cash payment to be made from the Creditor Trust pursuant to this Agreement and the Plan may be made by check or wire transfer, at the option of the Trustee in his sole discretion.

4.5.5. *Rounding*. Where the calculation of a distribution results in a fraction of a cent owing, the calculation shall be rounded down to the nearest whole cent for purposes of paying (or reserving) the distribution.

4.5.6. *De Minimis Distributions*. Notwithstanding any provision of this Agreement to the contrary, no distribution of less than two dollars ($2.00) shall be made from the Creditor Trust on account of an Allowed Claim.

4.5.7. *Interim and Final Distributions of Net Available Funds*. As soon as practicable after the Effective Date, the Trustee shall make an initial distribution of Net Available Funds from the Creditor Trust to the Non-Priority Trust Beneficiaries holding Allowed Claims within Class 4 of the Plan in accordance with the provisions of Section 4.4.1 of the Plan. Thereafter, the Trustee shall, from time to time as he deems warranted in his reasonable discretion, make additional distributions of Net Available Funds to such Non-Priority Trust Beneficiaries as Disputed Claims within such Class of the Plan are finally determined and/or as Net Available Funds are made available for further distributions. If and when all Allowed Claims within Class 4 of the Plan have been paid in full in accordance with the provisions of Section 4.4.1 of the Plan (or in the case of Disputed Claims within Class 4, have been reserved for in accordance with the provisions of Section 3.4.1 of this Agreement), then the Trustee shall commence making distributions to Non-Priority Trust Beneficiaries holding Allowed Claims within Classes 1, 5 and 6 of the Plan pursuant to the provisions of Sections 4.1.2, 4.5.2 and 4.6.1 of the Plan in the same manner. In the case of each of the above-referenced categories of Allowed Claims, prior to making each additional or the final distribution to the Non-Priority Trust Beneficiaries holding Allowed Claims within the particular Class at issue, the Trustee shall recalculate each Non-Priority Trust Beneficiary's Pro Rata Share to ensure that each Non-Priority Trust Beneficiary holding an Allowed Claim within the particular Class will have received, in the aggregate, a Pro Rata Share of the distributions consistent with the treatment provisions of Section 4.1.2, 4.4.1, 4.5.2 or 4.6.1 of the Plan, as the case may be.

4.5.8. *Undeliverable and Unclaimed Distributions*. Except for distributions of Cash that are made by wire transfer as authorized by Section 4.5.4 of this Agreement, each distribution of Cash to be made from the Creditor Trust to a Creditor Trust Beneficiary shall be delivered to the Creditor Trust Beneficiary by U.S. first class mail, postage prepaid, using (a) the mailing address identified on the Ballot for such Allowed Claim which was timely submitted by the holder of the Allowed Claim to the Balloting Agent, if applicable, or (b) if no such Ballot was submitted to the Balloting Agent, then the mailing address for the provision of notices stated on the proof of claim filed with the Bankruptcy Court in relation to such Allowed Claim, if applicable, or (c) if no proof of claim was filed with the Bankruptcy Court, the mailing address

set forth in the Debtor's Schedules in relation to such Allowed Claim; *provided, however*, that if an Allowed Claim has been transferred to another Person on or before the Distribution Record Date, and such transfer was properly evidenced and effectuated by the filing of a claim transfer notice with the Bankruptcy Court pursuant to Bankruptcy Rule 3001(e) on or before the Distribution Record Date which was not contested, then such distribution shall be delivered to the transferee of the Allowed Claim by U.S. first class mail, postage prepaid, using the mailing address noted on the claim transfer notice. Any distribution which is returned to the Creditor Trust/Trustee and identified by the U.S. Postal Service as undeliverable without any indication of a forwarding address shall be retained by the Creditor Trust for a period of ninety (90) days from the date of its original mailing unless otherwise ordered by the Bankruptcy Court. Failure of the holder of the Allowed Claim to come forward and validly make claim to the undelivered distribution by the end of such retention period shall constitute the holder's unconditional and irrevocable waiver of any right to receive the distribution and any further distributions from the Creditor Trust on account of such Allowed Claim, and shall constitute the holder's forfeiture to the Creditor Trust of the distribution and any and all future distributions to which the holder would be entitled in relation to such Allowed Claim. Similarly, unless otherwise ordered by the Bankruptcy Court, failure of the holder of an Allowed Claim to present for payment a distribution check issued by the Creditor Trust/Trustee (which is not returned to the Creditor Trust/Trustee as undeliverable) within ninety (90) days of the mailing of such distribution shall constitute the holder's unconditional and irrevocable waiver of any right to receive the distribution and any further distributions from the Creditor Trust on account of such Allowed Claim, and shall constitute the holder's forfeiture to the Creditor Trust of the distribution and any and all further distributions to which the holder would be entitled in relation to such Allowed Claim. Forfeited distributions shall be available to fund costs of administration of the Creditor Trust or for distribution to Creditor Trust Beneficiaries consistent with the provisions of Articles 3 and 4 of the Plan. Neither the Post-Confirmation Debtor nor the Trustee shall have any obligation to independently undertake any investigation to determine the whereabouts of any Creditor Trust Beneficiary.

4.5.9.  *Disputed Distributions*.  In the event that a dispute arises as to the rightful owner of an Allowed Claim, thereby calling into question the rightful recipient of a distribution from the Creditor Trust, the Creditor Trust/Trustee may, in lieu of making the distribution, either (a) deposit the distribution, if Cash, into a segregated account until a determination is made as to the rightful owner of the distribution by the Bankruptcy Court or by written agreement between each of the Persons making claim to the distribution, or (b) interplead the distribution into the registry of the Bankruptcy Court or such other court having jurisdiction over the disputed distribution and the Persons making claim to such distribution, reserving the right to assert any and all claims that the Creditor Trust/Trustee may have in relation to such interpleader action.

## ARTICLE 5
## RIGHTS, POWERS AND DUTIES OF CREDITOR
## TRUST OVERSIGHT COMMITTEE

5.1.    Members.  The Creditor Trust Oversight Committee shall consist of no fewer than three and no more than five individuals, each of whom holds, or is the designated representative of an entity that holds, a General Unsecured Claim in the Bankruptcy Case.

5.2.    Acceptance by Initial Creditor Trust Oversight Committee Members.  The Initial Creditor Trust Oversight Committee Members do hereby accept the appointment to act and serve as the initial members of the Creditor Trust Oversight Committee and to take such actions in such capacity as are required pursuant to the terms of this Agreement and the Plan.

5.3.    Powers and Responsibilities

5.3.1.    *Oversight Responsibilities*.  The Creditor Trust Oversight Committee shall primarily serve as an advisory committee to the Trustee and shall provide input to the Trustee on matters affecting administration of the Creditor Trust.  The establishment of the Creditor Trust Oversight Committee is primarily for the convenience of the Trustee, enabling the Trustee to solicit suggestions and advice from the Creditor Trust Oversight Committee, as desired, as to matters affecting administration of the Creditor Trust.  The Creditor Trust Oversight Committee shall provide such input to the Trustee if and when requested.  As an advisory body, however, the Creditor Trust Oversight Committee is not charged with the responsibility of monitoring the Trustee's administration of the Creditor Trust, and is under no obligation, whatsoever, to ensure that the Creditor Trust is properly and adequately administered by the Trustee.

5.3.2.    *Review of Books and Records*.  The Creditor Trust Oversight Committee shall have the right to review all books and records maintained by the Trustee in the administration of the Creditor Trust.  Upon reasonable request, the Trustee shall make all such books and records available to the Creditor Trust Oversight Committee.

5.3.3.    *Removal of Trustee*.  In the event that the Creditor Trust Oversight Committee determines, after reasonable investigation, that the Trustee has taken certain actions, or failed to take certain actions, constituting malfeasance or gross negligence in the administration of the Creditor Trust, then the Creditor Trust Oversight Committee shall have the authority to file a motion with the Bankruptcy Court, on behalf of the Creditor Trust, requesting discharge of the Trustee as trustee of the Creditor Trust.  The Trustee shall not be discharged from such office except upon entry of an order by the Bankruptcy Court directing same.  Notwithstanding the foregoing, the Creditor Trust Oversight Committee is not charged with the responsibility of monitoring the Trustee's administration of the Creditor Trust, and is under no obligation, whatsoever, to ensure that the Creditor Trust is properly and adequately administered by the Trustee or to seek removal of the Trustee.

5.3.4.    *Appointment of Successor Trustee*.  In the event of the death, resignation or discharge of the Trustee, the Creditor Trust Oversight Committee shall promptly select a Successor Trustee to serve as the Trustee.  Every Successor Trustee appointed pursuant to this provision of the Agreement shall execute and deliver to the Creditor Trust Oversight Committee an instrument whereby the Successor Trustee: (a) accepts such appointment and agrees to be bound by the terms of this Agreement, the Plan and the Confirmation Order; and (b) in the event that the Post-Confirmation Debtor has not yet been formally terminated, agrees to accept the appointment as the Post-Confirmation Debtor's President, sole member of the board of directors

of the Post-Confirmation Debtor, and the person authorized to wind up the Post-Confirmation Debtor's affairs and execute and file all necessary documents to formally terminate the Post-Confirmation Debtor's existence. Upon the Successor Trustee's execution and delivery of said instrument, the Successor Trustee, without any further act, deed or conveyance, shall become vested with all rights, powers, duties and obligations of the Trustee.

5.4.    Actions of Creditor Trust Oversight Committee.  Any action of the Creditor Trust Oversight Committee shall only be deemed authorized if a majority of the members of the Creditor Trust Oversight Committee vote in favor of such action.

5.5.    Compensation and Reimbursement of Expenses.  The members of the Creditor Trust Oversight Committee shall receive no compensation for their services, but shall be entitled to reimbursement for any reasonable out-of-pocket expenses incurred in connection with their services (excluding attorneys' fees).  Such reimbursement shall be made solely and exclusively from the Trust Assets.

5.6.    Exculpation; Indemnification.  Neither the Creditor Trust Oversight Committee nor any member of the Creditor Trust Oversight Committee shall be personally liable to the Creditor Trust, the Trustee, any of the Creditor Trust Beneficiaries or any other Person for any actions or omissions taken by the Creditor Trust Oversight Committee.  The Creditor Trust shall indemnify the members of the Creditor Trust Oversight Committee against any and all claims, causes of action and liability, including all expenses and defense costs, associated with, and shall hold harmless the members of the Creditor Trust Oversight Committee as to, their actions and omissions in serving on the Creditor Trust Oversight Committee, except to the extent that such actions or omissions constitute gross negligence or willful misconduct.

5.7.    Resignation.  A member of the Creditor Trust Oversight Committee may resign in such capacity by executing and delivering an instrument in writing to the Trustee and each of the remaining members of the Creditor Trust Oversight Committee evidencing such resignation.

5.8.    Successor Members.  In the event of the death or resignation of a member of the Creditor Trust Oversight Committee, the remaining members of the Creditor Trust Oversight Committee shall have the authority to, and shall promptly, appoint a successor member to the Creditor Trust Oversight Committee (who holds or is serving as the representative of a Person that holds a General Unsecured Claim in the Bankruptcy Case), unless the remaining members number at least three (3), in which case the remaining members may, instead, determine to not appoint a successor member.  Upon the appointment of a successor member to the Creditor Trust Oversight Committee, the Creditor Trust Oversight Committee shall promptly notify the Trustee of such appointment.  Every successor member to the Creditor Trust Oversight Committee appointed pursuant to this provision of the Agreement shall execute and deliver to the Trustee and the Creditor Trust Oversight Committee an instrument whereby the successor member accepts such appointment and agrees to be bound by the terms of this Agreement, the Plan and the Confirmation Order.  Upon the successor member's execution and delivery of said instrument, the successor member, without any further act, shall become vested with all rights, powers, duties and obligations of a member of the Creditor Trust Oversight Committee.

## ARTICLE 6
## TERMINATION OF CREDITOR TRUST

6.1.    Termination of the Creditor Trust.  The Creditor Trust shall terminate upon the earlier of the following (the "Termination Date"): (a) the date on which the Trustee has fulfilled the purpose of the Creditor Trust, including, without limitation, the Trustee's distribution of all Trust Assets in accordance

with the provisions of this Agreement and the Plan; or (b) five (5) years after the Effective Date (the "Termination Deadline"). Every effort shall be made by the Trustee to see to it that the Termination Date shall be no later than the time reasonably necessary to accomplish the purpose of the Creditor Trust. Notwithstanding the foregoing, the Bankruptcy Court, upon motion of the Trustee, the Creditor Trust Oversight Committee, or any Creditor Trust Beneficiary, may extend the Termination Deadline for an additional finite period of time in the event that it does not appear that the Trustee will be able, after continuing reasonable efforts, to fully administer the Creditor Trust prior to the then-existing Termination Deadline; *provided, however*, that such motion must be filed with the Bankruptcy Court prior to the then-existing Termination Deadline. In the event that the Bankruptcy Court enters an order extending the Termination Deadline, then such extended deadline shall be the new Termination Deadline for purposes of this provision of the Agreement, and additional extensions may be requested thereafter in accordance with this provision of the Agreement. Upon termination of the Creditor Trust, the Trustee shall promptly provide notice of same to the Creditor Trust Oversight Committee.

6.2.    Effect of Death, Incapacity, Resignation or Discharge of Trustee.  The death, incapacity, resignation or discharge of the Trustee shall not operate to terminate the Creditor Trust or invalidate any actions taken by the Trustee.

6.3.    Effect of Death, Incapacity or Bankruptcy of Creditor Trust Beneficiary.  The death, incapacity or bankruptcy of a Creditor Trust Beneficiary during the term of the Creditor Trust shall not operate to terminate the Creditor Trust, nor shall it (a) entitle the heirs, legatees, representatives or creditors of the deceased, incapacitated or bankrupt Creditor Trust Beneficiary to an accounting or to take any action in the courts or elsewhere for the distribution of the Trust Assets or for a partition thereof, or (b) otherwise affect the rights and obligations of any Creditor Trust Beneficiary.

# ARTICLE 7
# MISCELLANEOUS PROVISIONS

7.1.    Governing Law.  This Agreement shall be governed by and interpreted pursuant to the laws of the State of Texas.  The Creditor Trust created hereby shall be construed, regulated and administered under the laws of the State of Texas.  Notwithstanding the foregoing, the validity and enforceability of this Agreement shall be controlled by the Plan, the Confirmation Order and applicable federal law to the extent that any law of the State of Texas would serve to invalidate this Agreement or otherwise render it unenforceable.

7.2.    Forum for the Resolution of Disputes.  All controversies, disputes or other contested matters concerning the administration of the Creditor Trust, this Agreement, and enforcement of the provisions set forth in this Agreement shall be resolved and determined by the Bankruptcy Court unless and to the extent that the Bankruptcy Court declines to exercise jurisdiction over same, in which case venue of any such controversy, dispute or other contested matter shall lie solely and exclusively in Dallas, Dallas County, Texas.

7.3.    Headings.  Each heading preceding an article, section or paragraph of this Agreement is inserted for convenience only and shall not affect interpretation or construction of this Agreement.

7.4.    Conflict of Provisions.  To the extent that any provision of this Agreement directly conflicts with, or is in any way materially inconsistent with, the terms and conditions of the Plan, the terms and conditions of the Plan shall govern and control.

7.5.    Savings Clause.  If any provision of this Agreement shall for any reason be held invalid or unenforceable by any court or governmental agency of competent jurisdiction, such invalidity or

unenforceability shall not affect any other provision of this Agreement, and the Agreement shall be construed as if such invalid or unenforceable provision had never been contained in the Agreement.

      7.6.   <u>Entire Agreement</u>.  This Agreement and the Plan constitute the entire agreement by and among the Parties, and there are no representations, warranties, covenants or obligations except as set forth herein and in the Plan.  This Agreement, together with the Plan, supersedes all prior and contemporaneous agreements, understandings, negotiations and discussions, written or oral, of the Parties relating to the subject matter hereof.  Except as otherwise expressly provided herein or in the Plan, nothing in this Agreement is intended, nor shall be construed, to confer upon or give to any Person other than the Parties hereto and the Creditor Trust Beneficiaries any rights or remedies under, or by reason of, this Agreement.

      7.7.   <u>No Waiver</u>.  The failure or delay on the part of the Trustee or Creditor Trust Oversight Committee to exercise any right or remedy conferred upon them pursuant to this Agreement shall not affect such right or remedy, nor shall it constitute the Trustee's or Creditor Trust Oversight Committee's waiver of such right or remedy.  Similarly, the resort to one form of remedy by the Trustee or Creditor Trust Oversight Committee shall not constitute a waiver of any alternative remedies available to them under this Agreement.

      7.8.   <u>Modification of Agreement</u>.  This Agreement may only be amended, modified or otherwise altered by an instrument in writing signed by each of the Parties and approved by the Bankruptcy Court.

      7.9.   <u>Notices</u>.  Unless and until otherwise directed in a writing served in accordance with this provision of the Agreement, all notices, requests, consents and other communications required or permitted by the terms of this Agreement shall be in writing and shall be hand-delivered, transmitted by facsimile transmission, or delivered by U.S. first class mail, postage prepaid, to the pertinent Party as follows:

<u>If to the Debtor, to:</u>                         with a copy to:
Paul Reinhart, Inc.                      Munsch Hardt Kopf & Harr, P.C.
Attn: R. Dale Grounds, President          Attn: E. Lee Morris, Esq.
2280 Campbell Creek Blvd., Suite 350      500 N. Akard Street, Suite 3800
Richardson, Texas 75082                Dallas, Texas 75201-6659
Facsimile: (972) 301-3283             Facsimile: (214) 855-7584

<u>If to the Trustee, to:</u>                       with a copy to:

_____          _____

_____          _____

Facsimile: _____        Facsimile: _____

<u>If to the Creditor Trust Oversight Committee, to</u>:

_____

_____

_____

Facsimile: _____

_____

_____

Facsimile: _____

_____

_____

Facsimile: _____

      7.10.   <u>Counterparts</u>.  This Agreement may be executed in any number of counterparts, each of which, when so executed and delivered by a Party hereto, shall be deemed an original, and all of which counterparts, when combined, shall constitute one and the same instrument.

[Reminder of Page Intentionally Left Blank]

**IN WITNESS WHEREOF**, the undersigned have caused this instrument to be executed effective as of the _____ day of _____, 2010.

**PAUL REINHART, INC**.


By:_____

Printed Name:_____

Title:_____


_____
[Trustee Name]
Trustee of PRI Creditors Trust


_____
[Creditor Trust Oversight Committee Member Name]
Member of Creditor Trust Oversight Committee


_____
[Creditor Trust Oversight Committee Member Name]
Member of Creditor Trust Oversight Committee


_____
[Creditor Trust Oversight Committee Member Name]
Member of Creditor Trust Oversight Committee