

NORTHERN DISTRICT OF TEXAS
**ENTERED**
TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

*[signature]*

**Signed April 26, 2010**                                            **United States Bankruptcy Judge**

---

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| PAUL REINHART, INC., d/b/a | § | Case No. 08-35283 HDH-11 |
| KENTEX COTTON COMPANY, and | § | |
| LONESTAR COTTON COMPANY | § | |
| | § | |
| **Debtor** | § | |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW
### ON THE AMENDED MOTION FOR DETERMINATION
### OF THE CLAIM OF RABO CAPITAL SERVICES, INC.

On April 23, 2010, this Court considered *Amended Motion for Determination of Claim* (the "Amended Motion") filed by Rabo Capital Services, Inc. ("Rabo"), and took the matter under advisement.

Rabo seeks allowance of a proof of claim (the "Claim") for amounts it asserts arise under a Forward Contract Commodity Repurchase Agreement (the "Contract"). The PRI Creditors' Trust

Trustee ("Plan Trustee") and Cooperative Marketing Alliance, In. ("CoMark") have objected to the allowance of the amount of the claim which Rabo seeks.

Although there were a number of issues addressed by the parties, the case boils down to the construction of the Contract, particularly as to margins, and whether Rabo fairly mitigated its damages.

Rabo's construction of the basic terms of the Contract is correct. The Contract is a commodities contract, which simply is handled differently because of the nature of the subject of the agreement. Before Paul Reinhart, Inc., d/b/a Kentex Cotton Company and Lonestar Cotton Company (the "Debtor"), defaulted, there were four transactions under the Contract, represented by Exhibits 2, 3, 4, and 5. Each time, Rabo sent these confirmations to the Debtor and there was no evidence offered at the hearing indicating that the Debtor disagreed with Rabo's calculations or construction of the Contract at the time of the confirmation, including how margins would work.

March and April 2008 were volatile periods in the cotton market. On March 13, 2008, the Debtor was in default under the Contract and Rabo demanded, pursuant to the Contract, additional collateral. The Debtor was unable to perform and Rabo exercised its rights. In response to Rabo's March 14 demand letter setting forth the facts and the default, the Debtor never once asserted that the calculation of amounts owed was incorrect. Finally, the testimony of Ms. Malo regarding the terms and conditions of the Contract was credible.

Rabo fairly mitigated its damages under New York law, which governs the Contract. The Plan Trustee, primarily, joined in, to a more limited extent, by CoMark, argue that Rabo had the duty to sell cotton on the market or hedge shortly after the default. While such action by Rabo might have

minimized its loss, such a conclusion does not necessarily follow from the record made at trial, nor from the wild changes occurring in the cotton market at the time of the default. The Contract is governed under New York law. Under New York law, a party to a contract is not required to take economically unreasonable steps or engage in transactions desired by the breaching party. *See Carlisle Ventures, Inc. v. Banco Espanol de Credito, SA*, 176 F. 3d 601 (2nd Cir. 1999). And, the Plan Trustee concedes in his pleadings that the general rule under New York commercial contract law holds that a party to a defaulted contract has no obligation to place hedging transactions to mitigate contract damages. Rabo disposed of the cotton within a few weeks of the default. It sold the cotton for a price in excess of $72,000,000. Under the circumstances, it mitigated its damages.

A couple of other points were raised by the parties, but can be disposed of quickly. There was an objection to that part of the Claim which included the payment of storage charges. Such charges had to be paid to enable Rabo to resell the cotton. They are a proper claim arising against the estate under the indemnity provision of the Contract, if nowhere else. And, common sense would tell the parties that for Rabo to mitigate and resell the cotton, it would need to clear up the storage charges.

Finally, the Claim sets forth, without detail, a claim for attorney's fees in the amount of $47,268. Rabo did not set out in any detail the name and qualifications of the attorney rendering such services, a description of such services, or rates. Without such information, this Court cannot award attorney fees to Rabo.

The parties announced, at the hearing, a reduction for an error on interest and an error of approximately $190,000 in a calculation. Such amounts should be deducted.

Therefore, the Amended Motion will be granted, but the amount of the allowed claim shall be reduced by the disallowed attorney's fees, and the two amounts referenced above and mentioned in open court.

Mr. Leonard shall prepare and submit to the Court an order consistent with these findings and conclusions. Such order should be submitted to the other parties for approval as to form.

It is **SO ORDERED**.

###END OF FINDINGS AND CONCLUSIONS###